USDC SCAN INDEX SHEET

















JAH   8/4/00   9:39

3:00-CV-00716   NYKO TECHNOLOGIES V. RED LINE LAB INC

*19*

*ANS.*

FREDERICK A. LORIG (SBN 057645)
DAVID M. KLEIMAN (SBN 194955)
BRIGHT & LORIG P.C.
633 West Fifth Street, Suite 3330
Los Angeles, California 90071
Telephone:   (213) 627-7774
Facsimile:   (213) 627-8508

MATTHEW V. HERRON, ESQ.
MEISENHEIMER, HERRON & STEELE
550 West "C" Street, Suite 1760
San Diego, CA 92101-3545
Phone: (619) 233-4122
Fax:    (619) 233-3709

Attorneys for Defendants
RED LINE RESEARCH LABS, Inc.;
G.I. MANUFACTURING, Inc.;
and STEVEN G. LEISERSON.

FILED

00 AUG -3 PM 2: 25

BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NYKO TECHNOLOGIES, INC. a California corporation,<br>        Plaintiff,<br><br>        v.<br><br>RED LINE RESEARCH LABORATORIES et al.<br>        Defendants. | Civil Case No.  00 CV 00716 JM (POR)<br><br>DEFENDANTS' ANSWER<br><br><br><br>DEMAND FOR JURY TRIAL. |

Case No. 00cv00716 JM (POR)

19

1       Defendants Redline Research Laboratories Inc., G.I. Manufacturing Inc.,

2  and Steven G. Leiserson (hereinafter collectively "Defendants") through their

3  undersigned counsel of record hereby answer the claims of Plaintiff Nyko

4  Technologies Inc., (hereinafter "Plaintiff"), demand trial by jury under Rule 38(b)

5  Fed. R. Civ. P. and Local Rule 38.1, and respond as follows:

6

7                           **THE PARTIES**

8  1.     Responding to Paragraph 1 of Plaintiff's complaint, Defendants admit the

9        allegations thereof.

10

11 2.     Responding to Paragraph 2 of Plaintiff's complaint, Defendants admit the

12       allegations thereof.

13

14 3.     Responding to Paragraph 3 of Plaintiff's complaint, Defendants admit the

15       allegations thereof.

16

17 4.     Responding to Paragraph 4 of Plaintiff's complaint, Defendants admit the

18       allegations thereof.

19

20                     **JURISDICTION AND VENUE**

21

22 5.     Responding to Paragraph 5 of Plaintiff's complaint, Defendants admit that

23       Plaintiff purports to state a claim for declaratory relief of the patents-in-suit,

24       but deny that there is jurisdiction under the declaratory judgement act over

25       all named Defendants.

26

27

28

6. Responding to Paragraph 6 of Plaintiff's complaint, Defendants admit that Steven G. Leiserson resides in this district and that Red Line has its principal place of business in this district, but otherwise deny the allegations of this paragraph.

7. Responding to Paragraph 7 of Plaintiff's complaint, Defendants deny the allegations thereof.

## DECLARATORY RELIEF OF PATENT INVALIDTY
## AND NON-INFRINGEMENT

8. Responding to Paragraph 8 of Plaintiff's complaint, Defendants admit that the '904 patent attached as Exhibit 1 to the complaint issued to Leiserson on March 9, 1993. By license agreement, Steven Leiserson granted an exclusive license of all rights in the '904 patent to Red Line. By subsequent license agreement, Red Line granted an exclusive license to G.I. of all of its rights in the '904 patent. Steven Leiserson subsequently assigned all of his rights in the '904 patent to Red Line. Defendants deny the remainder of the allegations in paragraph 8 of the complaint on the basis that they are vague, ambiguous, indefinite and unintelligible.

9. Responding to Paragraph 9 of Plaintiff's complaint, Defendants admit that the '760 patent attached as Exhibit 2 to the complaint issued to Leiserson on July 6, 1993. By license agreement, Steven Leiserson granted an exclusive license of all rights in the '760 patent to Red Line. By subsequent license agreement, Red Line granted an exclusive license to G.I. of all of its rights in the '760 patent. Steven Leiserson subsequently assigned all of his rights in the '760 patent to Red Line. Defendants deny the remainder of the

2

1   allegations in paragraph 9 of the complaint on the basis that they are vague,
2   ambiguous, indefinite and unintelligible.

3

4   10.   Responding to Paragraph 10 of Plaintiff's complaint, Defendants admit that
5         the '636 patent attached as Exhibit 3 to the complaint issued to Leiserson on
6         November 9, 1993. By license agreement, Steven Leiserson granted an
7         exclusive license of all rights in the '636 patent to Red Line.  By
8         subsequent license agreement, Red Line granted an exclusive license to
9         G.I. of all of its rights in the '636 patent.   Steven Leiserson subsequently
10        assigned all of his rights in the '636 patent to Red Line. Defendants deny
11        the remainder of the allegations in paragraph 10 of the complaint on the
12        basis that they are vague, ambiguous, indefinite and unintelligible.

13

14  11.   Responding to Paragraph 11 of Plaintiff's complaint, Defendants admit that
15        the '358 patent attached as Exhibit 4 to the complaint issued to Leiserson on
16        June 20, 1995. By license agreement, Steven Leiserson granted an
17        exclusive license of all rights in the '358 patent to Red Line.  By
18        subsequent license agreement, Red Line granted an exclusive license to
19        G.I. of all of its rights in the '358 patent.   Steven Leiserson subsequently
20        assigned all of his rights in the '358 patent to Red Line. Defendants deny
21        the remainder of the allegations in paragraph 11 of the complaint on the
22        basis that they are vague, ambiguous, indefinite and unintelligible.

23

24  12.   Responding to Paragraph 12 of Plaintiff's complaint, Defendants admit that
25        the '488 patent attached as Exhibit 5 to the complaint issued to Leiserson on
26        April 9, 1996. By license agreement, Steven Leiserson granted an
27        exclusive license of all rights in the '488 patent to Red Line.  By
28        subsequent license agreement, Red Line granted an exclusive license to

3

1  G.I. of all of its rights in the '488 patent.   Steven Leiserson subsequently

2  assigned all of his rights in the '488 patent to Red Line.   Defendants deny

3  the remainder of the allegations in paragraph 12 of the complaint on the

4  basis that they are vague, ambiguous, indefinite and unintelligible.

5

6  13.  Responding to Paragraph 13 of Plaintiff's complaint, Defendants admit that

7  the '303 patent attached as Exhibit 6 to the complaint issued to Leiserson on

8  March 4, 1997.  By license agreement, Steven Leiserson granted an

9  exclusive license of all rights in the '303 patent to Red Line.  By

10  subsequent license agreement, Red Line granted an exclusive license to

11  G.I. of all of its rights in the '303 patent.   Steven Leiserson subsequently

12  assigned all of his rights in the '303 patent to Red Line.   Defendants deny

13  the remainder of the allegations in paragraph 13 of the complaint on the

14  basis that they are vague, ambiguous, indefinite and unintelligible.

15

16  14.  Responding to Paragraph 14 of Plaintiff's complaint, Defendants admit that

17  Plaintiff has sold power supply devices for video games under the names

18  "Power Pack" and "Shock-N-Rock" which infringe the patent rights

19  possessed by Defendants Red Line and G.I., but otherwise deny the

20  remainder of the allegations.

21

22  15.  Responding to Paragraph 15 of Plaintiff's complaint, Defendants admit that

23  Defendant G.I. sent letters to Nyko at its place of business in Los Angeles

24  which advised Nyko of its infringement of patent rights possessed by G.I.,

25  of Nyko's corresponding violation of a permanent injunction which enjoins

26  Nyko from such infringement, and which contained a warning of contempt

27  proceedings against Nyko for its violations of the injunction.  The letters

28  sent by Defendant G.I. also contained an express invitation for a license.

4

1   Defendants deny the remainder of the allegations contained in paragraph 15
2   of the complaint.

3

4   16.   Responding to Paragraph 16 of Plaintiff's complaint, Defendants deny the
5         allegations thereof.

6

7   17.   Responding to Paragraph 17 of Plaintiff's complaint, Defendants deny the
8         allegations thereof.

9

10  18.   Responding to Paragraph 18 of Plaintiff's complaint, Defendants deny the
11        allegations thereof.

12

13  19.   Responding to Paragraph 19 of Plaintiff's complaint, Defendants deny the
14        allegations thereof.

15

16  20.   Defendants deny that Plaintiff is entitled to any of its requested relief
17        contained in its prayer for relief, and to the extent that the prayer for relief in
18        the complaint contains any allegations against Defendants, Defendants
19        hereby deny such allegations.

20

21                          **<u>AFFIRMATIVE DEFENSES</u>**

22

23  21.   Plaintiff has failed to state a claim upon which relief may be granted.

24

25  22.   There is no jurisdiction under the declaratory judgement act over
26        Defendants.

27

28  23.   Venue is improper.

5

Case No. 00cv00716 JM (POR)

24. The Plaintiff is barred from raising its claims under the doctrine of res judicata.

25. The Plaintiff is barred from raising its claims under the doctrine of collateral estoppel.

26. The Plaintiff is barred from raising its claims under the doctrine of judicial estoppel.

27. The Plaintiff is barred from any equitable relief by the doctrine of unclean hands.

28. On August 2, 2000 the Honorable Margaret Morrow of the United States District Court for the Central District of California Ordered that the case captioned Red Line Research Laboratories Inc. & G.I. Manufacturing Inc. v. Nyko Technologies Inc., Elias Naghi, Herschel Naghi & David Naghi Case No. 00-CV-05309MMM(CTx) be transferred to this Court.   See Order of Judge Morrow attached hereto as Exhibit 1.  Accordingly, the claims Defendant Red Line and G.I. have against Plaintiff Nyko are already pending before this Court in a related action.  See Complaint attached as Exhibit 2 hereto.   To the extent necessary to preserve the rights of Defendant Red Line and G.I. to assert the claims against Plaintiff contained in their transferred complaint, Defendants Red Line and G.I. hereby incorporate by reference the complaint attached hereto as Exhibit 2.

Case No. 00cv00716 JM (POR)

1

## PRAYER FOR RELIEF

2

3    WHEREFORE, Defendants pray for judgment, and a Court Order:

4

5       1.     Awarding Defendants their costs and disbursements for this action,

6   and their reasonable attorney fees on the basis that this case is "exceptional" under

7   35 U.S.C. 285;

8

9       2.     That a declaratory judgement establishing the validity, enforceability

10   and infringement of the patents-in-suit be entered against Plaintiff;

11

12       3.     That Plaintiff take nothing by way its declaratory judgement claims;

13   and

14

15       4.     Awarding Defendants such other relief as the Court deems just and

16   proper.

17

18   Dated: _____

19

20   Respectfully submitted,

21

    MEISENHEIMER, HERRON & STEELE

22

23

24   _____

    Matt Herron, Esq.
25   Attorneys for Red Line Labs Inc.,
    G.I. Manufacturing Inc., and Steven G. Leiserson.

26

27

28

## DEMAND FOR JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, and Local Rule 38.1, Red Line, G.I., and Steven G. Leiserson demand trial by jury of each and every issue or claim as to which they are entitled to trial by jury under Rule 38 of the Federal Rules of Civil Procedure.

Dated: August 3, 2000                     Respectfully submitted,

MEISENHEIMER, HERRON & STEELE

Matthew V. Herron, Esq.
Attorneys for Red Line Labs Inc.,
G.I. Manufacturing Inc., and Steven G.
Leiserson.

8

Case No. 00cv00716 JM (POR)

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

FILED
CLERK, U.S. DISTRICT COURT

JUL 3 1 2000

CENTRAL DISTRICT OF CALIFORNIA
BY                          DAVID

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY
FIRST CLASS MAIL, POSTAGE PREPAID, TO ALL COUNSEL
(OR PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF
RECORD IN THIS ACTION ON THIS DATE.

AUG

ENTERED
CLERK, U.S. DISTRICT COURT

AUG - 2 2000

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

RED LINE RESEARCH
LABORATORIES, INC. and G.I.
MANUFACTURING INC.,

               Plaintiff,

vs.

NYKO TECHNOLOGIES, INC.,
HERSCHEL NAGHI, DAVID NAGHI,
and ELIAS NAGHI,

               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. CV 00-05309 MMM (CTx)

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS OR, IN THE
ALTERNATIVE, TO TRANSFER

✓ Docketed
✓ Copies / NTC Sent
✓ JS - 5 / JS - 6
___ JS - 2 / JS - 3
___ CLSD

## I. INTRODUCTION AND BACKGROUND

On May 15, 2000, Red Line Research Laboratories, Inc. and its licensee G.I. Manufacturing, Inc. (collectively "Red Line"), filed this patent infringement suit against defendants Nyko Technologies, Inc. ("Nyko"), and brothers Herschel, David and Elias Naghi, Nyko's principals. At issue are six different patents dealing with rechargeable battery packs.[1]

This case is the third involving these plaintiffs and the Naghis or a company run by them.

---

[1] All six patents were issued to Steven Leiserson, who is not a party to this action. Leiserson granted an exclusive license to practice the patents to Red Line, which in turn granted an exclusive sublicense to G.I. Manufacturing ("G.I.M.").

EXHIBIT 1

1   The first such suit was filed by Red Line against Naki Electronics, Inc. in 1993 in the Central
2   District of California (the "Naki action"). That action, assigned to Judge Edward Rafeedie,
3   resulted in a jury finding that Naki had wilfully infringed the patents. Money damages were
4   awarded and a permanent injunction issued against Naki, its officers and their successors. Naki
5   continued to sell infringing products after issuance of the injunction, which resulted in a contempt
6   finding, and an award of additional damages by Judge Rafeedie. The second action between the
7   parties is a declaratory relief action filed by Nyko against Red Line, G.I.M. and Leiserson in the
8   Southern District of California on April 7, 2000.

9       Given the pendency of the declaratory relief action in the Southern District, Nyko and the
10  Naghis have moved to dismiss this action under the first-to-file rule. They seek, alternatively,
11  to have the matter transferred to the Southern District on forum non conveniens grounds.[2] Red
12  Line and G.I.M. oppose the motion, arguing that the first filed action is really the 1993 Naki
13  litigation, and that Nyko filed the declaratory relief action in the Southern District in an effort to
14  avoid Judge Rafeedie's continuing contempt jurisdiction. Specifically, Red Line contends that
15  Nyko filed the declaratory relief action only after Red Line advised that it would file a motion for
16  contempt before Judge Rafeedie asserting that Nyko's infringing products were "mere colorable
17  variations" of the infringing Naki products. Nyko disputes this characterization, and argues that
18  the Naki suit cannot be considered the first-filed action because it has closed.

19      Many of the arguments raised by the parties have been resolved as a result of recent orders
20  by Judges Rafeedie and Miller. On June 19, 2000, Judge Rafeedie denied Red Line's motion
21  seeking a contempt order in the Naki action, and held that the issue of Nyko's alleged
22  infringement "would be more appropriately resolved in a separate proceeding."[3]  Shortly

23

24      [2]In the event the court elects not to dismiss or transfer the action, the individual defendants
25  seek dismissal of the claims against them, asserting that Red Line has failed to plead facts
26  supporting its alter ego allegation or indicating that they were personally involved in any
    wrongdoing.

27      [3]Declaration of David M. Kleiman In Support of Plaintiff's Opposition To Defendants'
28  Motion To Dismiss Or, In The Alternative, To Transfer Venue ("Kleiman Decl."), Ex. 28.

thereafter, Judge Rafeedie declined a low number transfer of the case pursuant to General Order 224. This signaled his belief that "an unnecessary duplication of judicial resources [would not] result from" having the matter heard by a different judge.[4]  Subsequently, on July 14, 2000, Judge Miller denied Red Line's motion to dismiss the declaratory relief action pending in the Southern District for lack of jurisdiction and improper venue.  He similarly declined to transfer the action to the Central District.[5]  Judge Miller found that under the first-to-file rule, he was obligated to exercise jurisdiction over the action.  He noted that any argument that Nyko had filed in the Southern District to avoid Judge Rafeedie's contempt jurisdiction was moot, since Judge Rafeedie had denied Red Line's contempt motion and declined the low-number transfer.

Red Line contends that this court is not bound by Judge Miller's decision, because the instant case involves claims against the Naghi brothers, who are not parties to the Southern District action.  It asserts that it will be unable to obtain personal jurisdiction over the Naghis in that district, and that venue there will be improper.  On this basis, it urges the court to retain jurisdiction.

Red Line's arguments are unavailing.  Given Judge Rafeedie's ruling that Red Line's infringement claims should be raised in a separate proceeding, and given the fact that the Naki litigation has terminated, the pending declaratory relief suit in the Southern District is properly viewed as the first-filed action.  The substantial overlap between the parties and issues involved in this and the Southern District actions counsels that only a single suit proceed.  The fact that Red Line has asserted an inducement claim against the Naghis in this action does not mandate a contrary result, since Red Line can file an inducement counterclaim against them in the declaratory relief action.  Because the Naghis are residents of California, it is clear that Red Line can obtain personal jurisdiction over them in the Southern District.  Additionally, venue in that district will be proper since Red Line asserts Nyko is the alter ego of the Naghis, and the Naghis have made affirmative representations that venue there is proper, which waive any venue

_____

[4]*Id.*

[5]Kleiman Decl., Ex. 33.

objections they might otherwise have.  Finally, equitable considerations do not require that this court retain jurisdiction over the action, since Judge Miller has already determined that Nyko did not engage in forum-shopping mandating dismissal of the declaratory relief action.

## II. ANALYSIS

### A.     The First-To-File Rule

Under the doctrine of "federal comity," or the "first-to-file rule," a district court may transfer, stay or dismiss an action when a similar complaint has been filed in another district court.  See, e.g., *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 623 (9th Cir. 1991); *Church of Scientology of California v. United States Department of the Army*, 611 F.2d 738, 749 (9th Cir. 1980) (a district court has discretion to "decline judgment on an issue which is properly before another district," citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952)).  See also *Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 269 (C.D.Cal 1998); *Ward v. Follett Corp.*, 158 F.R.D. 645,648 (N.D.Cal. 1994).  The comity doctrine is intended to foster judicial economy and avoid conflicting judgments.  For this reason, it should not be rigidly or mechanically applied.  Rather, it should be invoked as necessary to ensure wise judicial administration.  See, e.g., *Church of Scientology, supra*, 611 F.2d at 749-50; *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982).

In evaluating whether to invoke the federal comity doctrine, the court must consider three factors: (1) the chronology of the case filings; (2) the identity of the issues involved; and (3) the identity of the parties.  See *Alltrade, supra*, 946 F.2d at 625.  Even if all three factors support a transfer, the court may still exercise jurisdiction over the second-filed action if equitable considerations warrant its doing so.  In this regard, evidence of forum shopping, anticipatory filing, or bad faith is relevant.  See *Alltrade, supra*, 946 F.2d at 628; *Church of Scientology, supra*, 611 F.2d at 750; *Guthy-Renker Fitness, supra*, 179 P.R.D. at 270.[6]

---

[6]It is clear that the first-to-file rule applies in patent actions.  See *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed.Cir. 1993) ("We prefer to apply in patent cases the general rule whereby the forum of the first-filed case is favored, unless considerations of judicial and

### 1.    Chronology Of The Case Filings

Nyko and the Naghis ask that this action be dismissed in favor of the declaratory relief action, which was filed on April 7, 2000, approximately five weeks before this suit was commenced.  If this case and the declaratory relief action were the only suits between these parties, it is clear that the declaratory relief action would be the first filed.  Because it believes that Nyko filed the Southern District action to evade Judge Rafeedie's contempt jurisdiction, however, Red Line asserts that the first filed action for purposes of the comity doctrine is the Naki litigation.[7]

All parties agree that the Naki litigation has terminated.  Moreover, Judge Rafeedie recently denied Red Line's motion for contempt based on the judgment in that action, stating that Red Line's infringement arguments were more properly raised in a separate proceeding.  Additionally, Judge Rafeedie declined a low-number transfer of this action on the basis that it was related to the Naki litigation.  Because that case concluded some time ago, it cannot be considered the first-filed action for purposes of this motion.  The chronology of filings, therefore, clearly favors dismissal or transfer of the instant case.

### 2.    Identity Of The Issues

It is clear that there is substantial overlap between the issues raised in this suit and the declaratory relief action pending in the Southern District.  Both seek an adjudication of Nyko's alleged infringement of five patents.[8]  Both involve the same accused devices.  Because Judge Miller has declined to transfer the declaratory relief action to this district, retaining jurisdiction over this case could produce conflicting rulings.  Such a result contravenes the essential purpose of the comity doctrine.  See *Church of Scientology, supra*, 611 F.2d at 750 ("The doctrine is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the

---

litigant economy, and the just and effective disposition of disputes, requires otherwise").

[7]Red Line's related argument that the first-to-file doctrine is inapplicable because Nyko engaged in "blatant forum shopping" will be addressed *infra*.

[8]This action concerns a design patent not raised in the Southern District action, while the Southern District action names an additional utility patent not at issue here.

1   embarrassment of conflicting judgments"); *Guthy-Renker*, *supra*, 179 F.R.D. at 269 ("The goal

2   is the avoidance of both an unnecessary burden on the federal judiciary and of conflicting

3   judgments"). Indeed, Red Line does not challenge this premise, or offer any argument that the

4   cases should be handled separately because they raise different or distinct issues. Such a position

5   would, in fact, be untenable in light of the fact that Red Line sought to have Judge Miller transfer

6   the declaratory relief action to the Central District.

7        It is true that this case involves a claim against the Naghi brothers for inducing

8   infringement that is not raised in the declaratory relief action. That claim, however, clearly arises

9   out of the same events that underlie the declaratory relief suit. Consequently, it does not preclude

10   dismissal or transfer since it can be asserted as a counterclaim in the Southern District action. See

11   *Genentech*, *supra*, 998 F.2d at 938 ("the compulsory counterclaim rule is particularly directed

12   against the failure of a party to assert a counterclaim in one action, followed by the institution of

13   a second action wherein the counterclaim is the basis of the complaint"); Fed.R.Civ.Proc. 13(a)

14   ("A pleading shall state in a counterclaim any claim which at the time of serving the pleading the

15   pleader has against any opposing party, if it arises out of the transaction or occurrence that is the

16   subject matter of the opposing party's claim and does not require for its adjudication the presence

17   of third parties of whom the court cannot acquire jurisdiction").[9] Thus, the second factor also

18   favors dismissal or transfer of the case.

19       **3.    Identity Of The Parties**

20        There is substantial overlap of parties as well. Nyko, Red Line and G.I.M. are parties to

---

22       [9]Where a plaintiff corporation is the alter ego of one or more individuals, the defendant

23   may assert a counterclaim against them. See, e.g., *Banco Nacional de Cuba v. First Nat'l City Bank of New York*, 478 F.2d 191, 192-23 (2d Cir. 1973) (allowing a counterclaim against an alter ego); *Real Colors, Inc. v. Patel*, 39 F.Supp.2d 978, 980 (N.D.Ill. 1999) (allowing a compulsory

24   counterclaim against the owner of the corporate plaintiff premised on an "alter ego" theory of

25   liability); *Ameritel Corp. v. Isoetec Communications, Inc.*, 1989 WL 81635, * 4-5 (D.Or. 1989)

26   (holding that a claim against a director and principal stockholder of the plaintiff corporation on an "alter ego" theory was a compulsory counterclaim); *Establissement Tomis v. Shearson Haydon Stone, Inc.*, 459 F.Supp. 1355, 1357, 1364-65 (S.D.N.Y. 1978) (a counterclaim against the

27   president and owner of the plaintiff corporation on an "alter ego" theory was properly brought as

28   compulsory counterclaim since it arose from the same set of facts underlying the complaint).

1  both suits. In the Southern District action, Nyko has also named Leiserson, the inventor of the

2  patents, as a defendant. Neither party, however, asserts that his presence in the suit alters or

3  expands the issues involved, or precludes dismissal or transfer of the instant suit.

4      Red Line does contend that the fact the Naghi brothers are defendants in this action

5  requires that the court retain jurisdiction. The Naghis are not parties to the declaratory relief

6  action, and Red Line argues that Judge Miller's decision to exercise jurisdiction over that case

7  does not evidence an intention to exercise jurisdiction over the Naghis. The absence of the Naghi

8  brothers from the declaratory relief action, however, does not preclude transfer or dismissal of

9  this case. As noted above, Red Line can easily bring the Naghis into that action as counter-

10  defendants. See *Genentech, supra,* 998 F.2d at 938.

11      Red Line asserts that "jurisdiction and venue against the individual Naghi brothers is . . .

12  not proper in the Southern District where none of the named defendants reside[s] and where none

13  of the activities giving rise to this action ha[s] occurred."[10] While Red Line maintains that the

14  Southern District "does not" have jurisdiction over the Naghis, it is clear that a court in that

15  district may exercise personal jurisdiction over the brothers, since they are residents of

16  California.[11] See, e.g., *Asahi Metal Industry Co., Ltd. v. Superior Court of California,* 480 U.S.

17  102, 108 (1987) ("'[T]he constitutional touchstone' of the determination whether an exercise of

18  personal jurisdiction comports with due process 'remains whether the defendant purposefully

19  established "minimum contacts" in the forum State,'" quoting *Burger King Corp. v. Rudzewicz,*

20  471 U.S. 462, 474 (1985)).

21      As for venue, where a complaint alleges that the corporate veil should be pierced, "venue

22  for personal liability of a corporate officer/owner for acts of infringement by the corporation . . .

23  may reasonably be based on the venue provisions of the corporation." *Hoover Group, Inc. v.*

24

25      [10]Plaintiffs' Opposition To Defendants' Motion To Dismiss Or, In The Alternative, To

26  Transfer Venue ("Pls.' Opp.") at 18:11-14.

27      [11]See, e.g., *id.* at 4:8-10 ("Judge Miller's decision did not involve the individual Naghi

28  brother defendants over whom this Court currently has jurisdiction, and the Southern District does not").

*Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed.Cir. 1996). Here, Red Line alleges both that Nyko is a "sham" corporation formed for the purpose of avoiding Judge Rafeedie's permanent injunction in the Naki litigation,[12] and that it is the alter ego of the Naghi brothers.[13]

Moreover, a party may waive any objections it has to venue in a particular district. See, e.g., *Manley v. Engram*, 755 F.2d 1463, 1468 (11th Cir. 1985) ("the right to object to improper venue may be waived in any of several ways: by express waiver, by conduct amounting to waiver as a matter of law, or by failure to interpose a timely and sufficient objection"). See also *Texas Municipal Power Agency v. Environmental Protection Agency*, 89 F.3d 858, 867 (D.C.Cir. 1986) ("parties may normally consent to be sued in a court that would otherwise be an improper venue"). Here, the Naghis' affirmative representations that venue is proper in the Southern District would appear to be a sufficient waiver of any improper venue objection they might otherwise have asserted. Accordingly, this factor also weighs in favor of transfer.

### 4.   Equitable Considerations

Finally, Red Line argues that even if the Naki litigation has concluded, this action should not be transferred or dismissed because it is clear Nyko engaged in "blatant forum-shopping." Were this court writing on a clean slate, Nyko's argument might be persuasive. Nyko commenced the Southern District action shortly after Red Line indicated it was going to file a contempt motion before Judge Rafeedie. Judge Rafeedie had previously held both Naki and David Naghi in contempt. One could infer, therefore, that Nyko and the Naghis sought to avoid having Judge Rafeedie adjudicate the infringement issue. This argument, however, has been explicitly rejected by Judge Miller and implicitly rejected by Judge Rafeedie, both of whom are in a better position than this court to evaluate the question.[14] See, e.g., *Martin v. South Carolina Bank*, 811

---

[12]Pls.' Opp. at 13-14; Complaint, ¶¶ 17-39.

[13]See, e.g., Complaint, ¶¶ 39, 43, 47.

[14]Judge Miller's July 14, 2000 Order denying Red Line's motion to transfer the declaratory relief action to the Central District rejected Red Line's forum shopping argument on the basis that the Southern District action "involves different products, different parties, [and] overlapping patents" and that Judge Rafeedie had declined to conduct further proceedings in the Naki action,

F.Supp. 679, 686 (M.D.Ga. 1992) ("[Plaintiff] desires this Court to act as an appellate court on the Alabama court's decision to consider [defendant's] declaratory judgment action, which this Court declines to do").

Even if this court were inclined to find that Nyko had engaged in forum shopping to avoid Judge Rafeedie's jurisdiction, it agrees with Judge Miller's observation that Judge Rafeedie's recent rulings render such considerations moot. Additionally, since Judge Miller has elected to exercise jurisdiction over the declaratory relief action, any argument that this court should retain jurisdiction of Red Line's suit to punish Nyko for forum shopping fails when judicial economy and the possibility of inconsistent judgments are considered. *Church of Scientology*, *supra*, 611 F.2d at 750; *Guthy-Renker*, *supra*, 179 F.R.D. at 269. See also *S.E.C. v. Captain Crab, Inc.*, 655 F.Supp. 615, 618 (S.D.N.Y. 1986) ("Policy considerations favoring the litigation of related claims in one forum are the consolidation of pretrial discovery, the minimization of time and expense for parties and witnesses, and the reduction of inconsistent results"); *Air Express International v. Consolidated Freightways, Inc.*, 586 F.Supp. 889, 892 (D.Conn. 1984) ("The court cannot conceive of an arrangement more expensive, time consuming, and inconvenient to the parties plaintiff as well as defendant, or more exhaustive of judicial resources, than . . . [t]he concurrent prosecution of these suits"). Accordingly, equitable concerns do not mandate the retention of Red Line's suit in this district.[15]

### 5.    The Present Action Should Be Transferred

A district court has discretion to transfer, stay or dismiss an action when it concludes that it should decline to exercise jurisdiction pursuant to the federal comity doctrine. See, e.g., *Alltrade*, *supra*, 946 F.3d at 623; *Guthy-Renker*, *supra*, 179 F.R.D. at 269. At the hearing on this motion, Red Line argued that Judge Rafeedie had not denied the contempt motion on the merits, but rather had determined that questions of infringement should be raised by the filing of

holding that the issues raised by the parties were "more appropriately resolved in a separate proceeding." (Kleiman Decl., Ex. 33 at 5).

[15]Because the court transfers this case under the first-to-file doctrine, it does not address Nyko's alternative arguments regarding transfer or dismissal.

a supplemental complaint. Once findings on such a supplemental complaint are made, Red Line maintains, it will bring those findings to Judge Rafeedie and ask him once again to consider the propriety of issuing a contempt order.[16] Red Line stated that it had raised this issue with Judge Miller and asked him to reconsider his denial of its motion to dismiss or transfer the Southern District case on this basis. Red Line requested that this court not decide defendants' motion pending Judge Miller's determination.

Red Line concedes that, however his order is interpreted, Judge Rafeedie has determined that *he* will not decide current issues of infringement. Accordingly, a decision must be made as to which of the pending suits alleging infringement will proceed. As between this and the Southern District action, there is no question that this is the second-filed suit. For this reason, the court concludes that little would be accomplished by withholding decision of defendants' motion.

The court will, however, transfer, rather than dismiss, the instant case. See, e.g., *California Security Co-op, Inc. v. Multimedia Cablevision, Inc.*, 897 F.Supp. 316, 321 (E.D. Tex. 1995) (transferring an action under the federal comity doctrine because dismissal would force plaintiff to refile its claims in the first action and further delay proceedings); *Fat Possum Records, Ltd. v. Capricorn Records, Inc.*, 909 F.Supp. 442, 447 (N.D.Miss. 1995) (after finding that it was proper to defer to the first-filed action under the federal comity doctrine, the court noted that it "s[aw] very little difference between the . . . options" of stay, dismissal or transfer, and transferred the case at plaintiff's request).

### III. CONCLUSION

For the foregoing reasons, defendants' motion is granted, and the court directs that this action be transferred forthwith to the Southern District of California.

DATED: July 31, 2000

_Margaret M. Morrow_
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

---

[16] Red Line provided the court with a copy of the motion for reconsideration at the hearing on this motion.

Frederick A. Lorig  (State Bar No. 057645)
David M. Kleiman  (State Bar No. 194955)
BRIGHT & LORIG
A Professional Corporation
633 West Fifth Street, Suite 3330
Los Angeles, California 90071
Telephone:  (213) 627-7774
Facsimile:  (213) 627-8508

Attorneys for Red Line Labs Inc.,
G.I. Manufacturing Industries Inc.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| RED LINE RESEARCH LABORATORIES INC., a California Corporation, and G.I. MANUFACTURING Inc. a New Hampshire Corporation | Case No 0-05309  (CTX) |
| Plaintiffs | COMPLAINT FOR PATENT INFRINGEMENT. |
| v. | DEMAND FOR JURY TRIAL |
| NYKO TECHNOLOGIES INC., a California Corporation, HERSCHEL NAGHI an individual residing in California, DAVID NAGHI an individual residing in California, and ELIAS NAGHI and individual residing in California. | |
| Defendants | |

FILED
Mar 16  4 25 PM '00

EXHIBIT 2

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and § 1338 because this action arises under 35 U.S.C. §271.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because all Defendants reside in this district, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## THE PARTIES

3. Plaintiff, Red Line Research Laboratories Inc. (hereinafter "Red Line") is a corporation organized under the laws of the state of California and having its principal place of business at 10845 Wheatlands Ave., Suite C, Santee, CA 92071-2867.

4. Plaintiff, G.I. Manufacturing Inc. (hereinafter "G.I.M.") is a corporation organized under the laws of New Hampshire and having its principal place of business at 37 Crystal Ave. Suite 282, Derry, New Hampshire, 03038.

5. Defendant Nyko Technologies Inc. (hereinafter "Nyko") is a corporation organized under the laws of California and has its principal place of business at 2311 South Cotner Avenue, Suite D, Los Angeles, California 90064.

2

EXHIBIT 6
307

1    6.      Defendant Herschel Naghi is a director, officer, and on information and

2          belief, owner, of Nyko who has his principal place of business at 2311

3          South Cotner Avenue, Suite D, Los Angeles, California 90064, and who

4          resides at 10134 Angelo View Dr., Beverly Hills, CA 90210-2038.

5

6    7.      Defendant David Naghi is a director, officer, and on information and belief,

7          owner, of Nyko who has his principal place of business at 2311 South

8          Cotner Avenue, Suite D, Los Angeles, California 90064, and who resides at

9          6630 Moore Dr., Los Angeles, CA 90048 .

10

11   8.      Defendant Elias Naghi is a director, officer, and on information and belief,

12         owner, of Nyko who has his principal place of business at 2311 South

13         Cotner Avenue, Suite D, Los Angeles, California 90064, and who resides at

14         7962 Oceanus Dr., Los Angeles, CA 90046-2045.

15

16                       <u>BACKGROUND FACTS</u>

17   9.      Plaintiffs incorporate the statements and allegations contained in paragraphs 1

18         through 8 of this Complaint as if fully rewritten herein.

19

20   10.     On July 6, 1993, the United States Patent and Trademark Office issued

21         U.S. patent no. 5,225,760 (the "'760 patent"), attached hereto as Exhibit 1,

22         to Steven Leiserson for his invention entitled "Rechargeable Power Pack"

23         By license agreement, Steven Leiserson granted an exclusive license of all

24         rights in the '760 patent to Red Line.  By subsequent license agreement,

25         Red Line granted an exclusive license to G.I.M. of all of its rights in the

26         '760 patent.

27

28

1   11.   On November 9, 1993, the United States Patent and Trademark Office
2         issued U.S. patent no. 5,260,636 (the "'636 patent"), attached hereto as
3         Exhibit 2, to Steven Leiserson for his invention entitled "Plug-in
4         Rechargeable Battery Unit". By license agreement, Steven Leiserson
5         granted an exclusive license of all rights in the '636 patent to Red Line.
6         By subsequent license agreement, Red Line granted an exclusive license to
7         G.I.M. of all of its rights in the '636 patent.
8
9   12.   On June 20, 1995, the United States Patent and Trademark Office issued
10        U.S. patent no. 5,426,358 (the "'358 patent"), attached hereto as Exhibit 3,
11        to Steven Leiserson for his invention entitled "Plug-in Rechargeable
12        Battery Unit". By license agreement, Steven Leiserson granted an
13        exclusive license of all rights in the '358 patent to Red Line.  By
14        subsequent license agreement, Red Line granted an exclusive license to
15        G.I.M. of all of its rights in the '358 patent.
16
17  13.   On April 9, 1996, the United States Patent and Trademark Office issued
18        U.S. patent no. 5,506,488 (the "'488 patent"), attached hereto as Exhibit 4,
19        to Steven Leiserson for his invention entitled "Rechargeable Power Pack
20        For Use In Devices Powered By Multiple Batteries". By license
21        agreement, Steven Leiserson granted an exclusive license of all rights in
22        the '488 patent to Red Line.  By subsequent license agreement, Red Line
23        granted an exclusive license to G.I.M. of all of its rights in the '488 patent.
24
25  14.   On March 4, 1997, the United States Patent and Trademark Office issued
26        U.S. patent no. 5,608,303 (the "'303 patent"), attached hereto as Exhibit 5,
27        to Steven Leiserson for his invention entitled "Video Game Power Pack".
28        By license agreement, Steven Leiserson granted an exclusive license of all

4

**EXHIBIT 6**

309

1    rights in the '303 patent to Red Line.  By subsequent license agreement,

2    Red Line granted an exclusive license to G.I.M. of all of its rights in the

3    '303 patent.

4

5   15.   On February 15, 1994, the United States Patent and Trademark Office

6         issued U.S. design patent no. 344,260 (the "'260 patent"), attached hereto

7         as Exhibit 6, to Steven Leiserson for Steven Leiserson's and Ochner

8         Helmut's invention entitled "Rechargeable Battery Pack".  By license

9         agreement, Steven Leiserson granted an exclusive license of all rights in

10        the '260 patent to Red Line.  By subsequent license agreement, Red Line

11        granted an exclusive license to G.I.M. of all of its rights in the '260 patent.

12

13  16.   The patents listed above in paragraphs 10 through 15 may be hereinafter

14        referred to collectively as the "Rechargeable Battery Pack Patents."

15

16  17.   In 1993 Red Line Research Labs and its exclusive licensee Curtis

17        Manufacturing (now G.I.M.) initiated a patent infringement action against

18        Naki Electronics Inc. (hereinafter "Naki") in the United States District Court

19        for the Central District of California Case No.  CV-93-4005 ER (Mcx)

20        (hereinafter the "Naki Litigation").

21

22  18.   Defendants Herschel Naghi, David Naghi and Elias Naghi are the owners,

23        directors and officers of Naki.

24

25  19.   On December 29, 1994, after a trial on the merits, Naki was found by a jury

26        to have willfully infringed the '760, '636 and '260 patents.

27

28

20. The Honorable Edward Rafeedie , presiding in the Naki Litigation, entered a permanent injunction as follows:

> IT IS HEREBY ORDERED that defendant, Naki
> Electronics, Inc. ("Naki") its parents, subsidiaries,
> successors, assigns, heirs, affiliates and any business
> entity controlled by it or which controls it and any other
> person or entity acting under its authority or in privity
> with it, and **any and all persons, corporations or other**
> **business entities in active concert or participation with**
> **Naki who receive actual notice of this Judgement**,
> including, without limitation, recoton Corp., are hereby
> permanently enjoined from manufacturing, using, selling,
> offering for sale, distributing or otherwise placing in
> commerce, or in the hands of distributors, retailers,
> consumers or customers, the Power-Pak, Power-Pak+ and
> Turbo Twins **or any other similar product** that infringes
> United states Letters Patent Nos. 5,225,760 ("'760
> patent"), 5,260,636 ("'636 patent") and Design 344,260
> ("'260 patent"). [emphasis added]

21. On January 30, 1995 the Honorable Edward Rafeedie held Naki and Defendant David Naghi in contempt for violating the Permanent Injunction, as result of the continued sales by Naki and David Naghi of the enjoined infringing Power Pak products and Turbo Twins at a Las Vegas trade show in early January 1995, after entry of the Permanent Injunction.

1  22.  In holding Naki and David Naghi in contempt, the Court stated as follows:

2                  It appears to the Court that both Naki and Mr. Naghi fully

3                  intend to walk as close to or over the line created by this

4                  Court's permanent injunction.  The Court is not going to

5                  tolerate that, and if there is repetition, the Court is likely

6                  to pursue criminal sanction[s] and put the violator in jail

7                  for some substantial period of time.  That's the Court's

8                  view with respect to the record before it.

9

10  23.  An amended judgement was entered on January 30, 1995, awarding $900,000

11      in damages (doubled from the jury verdict of $450,000 due to Naki's willful

12      and "egregious" infringement), $38,886.88 in prejudgement interest and

13      $233,188.12 in attorney's fees and costs.

14

15  24.  On March 27, 1995, to avoid paying for the consequences of its infringement,

16      Naki filed for voluntary bankruptcy under chapter 11 of the bankruptcy code.

17      Red Line and Curtis Manufacturing filed claims against the Naki bankruptcy

18      estate, and asserted the grounds to pursue Naki shareholders to obtain

19      satisfaction of the judgement for patent infringement.

20

21  25.  Red Line and Curtis Manufacturing settled their claim against the Naki

22      bankruptcy estate for only a fraction of the amount which had been awarded

23      to them by the Court in the Naki Litigation.

24

25  26.  Defendant Elias Naghi purchased Naki from the bankruptcy estate, and

26      Defendants Herschel Naghi and David Naghi remained as directors and

27      officers of Naki.

28

27.     On or about June 14, 1996, Defendants Elias Naghi, Herschel Naghi and David Naghi recommenced doing business as Nyko Technologies Inc. (hereinafter "Nyko").

28.     Defendants Elias Naghi, Herschel Naghi and David Naghi were, and are, directors and officers of Nyko.

29.     Defendants Elias Naghi, Herschel Naghi and David Naghi were, and are, directors and officers of Naki.

30.     Nyko and Naki both have the same location for their executive offices.

31.     Nyko is in the business of selling video game accessories, the same business Naki was in.

32.     Nyko has sold, and continues to sell, in the United States rechargeable battery packs for the Nintendo GameBoy series of handheld video games, just as Naki did.

33.     The Nyko rechargeable battery packs were, and continue to be, marketed and sold as the Nyko "Twelve Hour Power Pak", Nyko "Six Hour Power Pak", Nyko "Ten Hour Power Pak", and Nyko "Shock-N-Rock".

34.     The Nyko "Twelve Hour Power Pak" infringes at least one claim of the rechargeable battery pack patents, including those patents which were previously adjudged valid, enforceable and infringed in the Naki Litigation.

35.   The Nyko  "Six Hour Power Pak" infringes at least one claim of the rechargeable battery pack patents, including those patents which were previously adjudged valid, enforceable and infringed in the Naki Litigation.

36.   The Nyko  "Ten Hour Power Pak" infringes at least one claim of the rechargeable battery pack patents, including those patents which were previously adjudged valid, enforceable and infringed in the Naki Litigation.

37.   The Nyko  "Shock-N-Rock" infringes at least one claim of the rechargeable battery pack patents, including those patents which were previously adjudged valid, enforceable and infringed in the Naki Litigation.

38.   Nyko is a successor to Naki, with there being a substantial continuity of identity between Nyko and Naki.  Nyko shares the same directors, officers, location and line of business as Naki.  Nyko has, and had, actual notice of the Court's injunction in the Naki litigation through its owners, directors and officers.  Accordingly, Nyko as a successor to Naki, is bound by the Naki Litigation, including without limitation the Permanent Injunction entered by the Honorable Edward Rafeedie.

39.   Nyko was formed by Defendants Elias Naghi, Herschel Naghi and David Naghi for the fraudulent purpose of evading the Court's injunction entered in the Naki Litigation.

40. Red Line and G.I.M., contacted Nyko and the Naghis to give notice of their intention to file a motion to hold Nyko and Defendants Elias Naghi, Herschel Naghi and David Naghi in contempt for violating the injunction in the Naki Litigation. Rather than cooperate with Red Line and G.I.M. in a discussion of the issues, Nyko and its directors and officers sought to evade the Court's authority in the Naki Litigation, and in blatant forum shopping sued Red Line, G.I.M., and quiescent patent owner and inventor Steven G. Leiserson, in the Southern District of California for a declaratory judgement on the same patents which this Court previously adjudged valid and infringed by the Naghis' other company Naki.

## FIRST CLAIM FOR RELIEF
### (Direct Patent Infringement)

41. Plaintiffs incorporate the statements and allegations contained in paragraphs 1 through 40 of this Complaint as if fully rewritten herein.

42. Nyko has sold, and continues to market and sell, in the United States, rechargeable battery packs under the names Power Pak and Shock-N-Rock which infringe one or more of the claims of the Rechargeable Battery Pack Patents.

43. On information and belief, the Nyko corporate entity is a sham which was formed by Defendants Elias Naghi, Herschel Naghi and David Naghi in a fraudulent attempt to evade the permanent injunction entered in the Naki Litigation, and to avoid personal liability for direct infringement of the Rechargeable Battery Pack Patents.

44. Defendant Elias Naghi as an owner, director and officer of Naki is bound by the Court's orders in the Naki Litigation, including but not limited to, the permanent injunction.

45. Defendant Herschel Naghi as a director and officer of Naki is bound by the Court's orders in the Naki Litigation, including but not limited to, the permanent injunction.

46. Defendant David Naghi as a director and officer of Naki is bound by the Court's orders in the Naki Litigation, including but not limited to, the permanent injunction.

47. On information and belief, Defendants Elias Naghi, Herschel Naghi, and David Naghi have acted together, knowingly, willfully, and with specific intent to avoid liability for their acts of direct infringement and violations of the Court's orders in the Naki litigation, by forming and/or operating through corporate entity Nyko.

48. Nyko, Herschel Naghi, David Naghi, and Elias Naghi, were, and are, aware of the Rechargeable Battery Pack Patents, and their infringement of the Rechargeable Battery Pack Patents has therefore been, and continues to be, willful.

49. On information and belief, the infringement by Nyko, Herschel Naghi, David Naghi, and Elias Naghi of the Rechargeable Battery Pack Patents has caused and will continue to cause G.I.M., and Red Line substantial and irreparable injury for which they are entitled to receive all relief provided for by 35 U.S.C. §283, §284 §285, and §289, including but not limited to

11
**EXHIBIT 6**
316

1  preliminary and permanent injunctive relief, Defendants' profits, Plaintiffs'
2  lost profits, a reasonable royalty, treble damages, costs and reasonable
3  attorney fees.

4

5  ## SECOND CLAIM FOR RELIEF
6  ### (Inducing Infringement)

7

8  50.   Plaintiffs incorporate the statements and allegations contained in paragraphs 1
9        through 49 of this Complaint as if fully rewritten herein.

10

11 51.   On information and belief, Defendants Elias Naghi, Herschel Naghi, and
12       David Naghi knowing about the rechargeable Battery Pack Patents, and the
13       Naki Litigation, have with specific intent induced Nyko to market and sell
14       rechargeable battery packs for Nintendo GameBoy series handheld video
15       games, that infringe the Rechargeable Battery Pack Patents and which violate
16       the Court's injunction in the Naki Litigation.

17

18 52.   On information and belief, the infringement by Nyko, Herschel Naghi, David
19       Naghi and Elias Naghi of the Rechargeable Battery Pack Patents has caused
20       and will continue to cause G.I.M., and Red Line substantial and
21       irreparable injury for which they are entitled to receive all relief provided
22       for by 35 U.S.C. §283, §284 §285, and §289, including but not limited to
23       preliminary and permanent injunctive relief, Defendants' profits, Plaintiffs'
24       lost profits, a reasonable royalty, treble damages, costs and reasonable
25       attorney fees.

26

27

28

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment, and a Court Order:

1.     Preliminarily and permanently enjoining Nyko, Herschel Naghi, David Naghi and Elias Naghi from further infringement of the Rechargeable Battery Pack Patents;

2.     Awarding Plaintiffs the damages they sustained as a result of Nyko's, Herschel Naghi's, David Naghi's and Elias Naghi's unlawful acts, including but not limited to Defendants profits, Plaintiffs' lost profits and/or a reasonable royalty pursuant to 35 U.S.C. §284 and §289;

3.     Awarding Plaintiffs treble damages pursuant to 35 U.S.C. §284 for Nyko's, Herschel Naghi's, David Naghi's and Elias Naghi's willful infringement of the Rechargeable Battery Pack Patents;

4.     Awarding Plaintiffs their costs and disbursements for this action, and their reasonable attorney fees on the basis that this case is "exceptional" under 35 U.S.C. 285;

5.     Awarding Plaintiffs pre-judgment interest; and

13

EXHIBIT 6
318

1    6.    Awarding Plaintiffs such other relief as the Court deems just and

2  proper.

3

4  Dated: May 16, 2000

5

6  Respectfully submitted,

7  BRIGHT & LORIG P.C.

8  *David Kleiman*

9

   David M. Kleiman
10
   Attorneys for Red Line Labs Inc.,
11  G.I. Manufacturing Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14
**EXHIBIT 6**
319

1

## DEMAND FOR JURY

2       Pursuant to Rule 38 of the Federal Rules of Civil Procedure, and Local

3   Rule 3.4.10.1, Plaintiffs demand trial by jury of each and every issue or claim as

4   to which they are entitled to trial by jury under Rule 38 of the Federal Rules of

5   Civil Procedure.

6

7   Dated: May 16, 2000

8   Respectfully submitted,

9   BRIGHT & LORIG P.C.

10

11

12   David M. Kleiman

13   Attorneys for Red Line Labs Inc.,
    G.I. Manufacturing Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

US005225760A

# United States Patent [19]

Leiserson

[11] Patent Number: 5,225,760

[45] Date of Patent: Jul. 6, 1993

[54] RECHARGEABLE POWER PACK

[76] Inventor: Steven G. Leiserson, 10845
Wheatlands Ave. Ste. C, Santee,
Calif. 92071-7244

[21] Appl. No.: 793,122

[22] Filed: Nov. 18, 1991

[51] Int. Cl.⁵ .................................... H02J 7/00
[52] U.S. Cl. .............................. 320/2; 429/98
[58] Field of Search ...................... 320/2, 5, 6, 15, 17;
429/96, 97, 98, 99, 100

[56] References Cited

## U.S. PATENT DOCUMENTS

| 3,757,194 | 9/1973 | Weber et al. | 320/2 |
| 3,553,789 | 5/1975 | Achenbach et al. | 320/2 |
| 4,389,469 | 6/1983 | Nicholls | 429/98 |
| 4,563,627 | 1/1986 | Orban | 320/2 X |

## FOREIGN PATENT DOCUMENTS

0084024  3/1990  Japan ............................. 320/2

Primary Examiner—Kristine L. Peckman
Attorney, Agent, or Firm—Henri J. A. Charmasson

[57] ABSTRACT

A rechargeable power pack is shaped and dimensioned
to be inserted in the battery compartment of an electri-
cal device. The top of the power pack is exactly sym-
metrical with the battery compartment cover which it
replaces. The power pack houses rechargeable power
cells, and has a peripheral wall spaced apart from the
sides of the battery compartment mounting the battery
contact terminals. Flexible prongs project from the
peripheral walls to provide a wiping contact with either
a spiral spring negative terminal or stationary positive
terminal of the compartment. A top mounted connector
allows recharging of the power pack either during or
after the operation of the electrical device.

13 Claims, 1 Drawing Sheet



EXHIBIT 1    16
EXHIBIT 6
321

U.S. Patent                    July 6, 1993                    5,225,760



PRIOR ART

FIG. 1

FIG. 2

FIG. 3

FIG. 4

FIG. 5

FIG. 6

EXHIBIT 117
EXHIBIT 6
322

5,225,760

1

# RECHARGEABLE POWER PACK

## FIELD OF THE INVENTION

This invention relates to rechargeable power packs for portable electrical devices.

## BACKGROUND OF THE INVENTION

Many portable, battery-powered electronic devices such as radios, pagers, cassette recorders and the like have a covered battery compartment that is sized to accommodate several cylindrical batteries and to interconnect them in a parallel or a serial configuration. The sides of the compartment have spiral spring terminals designed to forcedly contact the negative, bottom poles of the batteries, and stationary plates to contact their positive top located poles. Batteries, whether rechargeable or not, must be inserted one by one between pairs of such terminals. Other electronic instruments with a higher power draw such as video recorders accept a power pack housing a plurality of rechargeable power cells. A recharged power pack may be conveniently substituted for a run-down one in a few seconds.

It would be advantageous to replace the set of batteries of the first-described type of instrument by a rechargeable power pack which would fit in the battery compartment. However, the presence of the various spiral spring terminals and the battery-separating ribs that usually lining the bottom of the battery compartment interfere with the insertion of such power packs.

## SUMMARY OF THE INVENTION

The principal and secondary object of the invention is to provide a replacement for a set of batteries normally required to energize a portable electrical device by a single, rechargeable power pack that fits within the battery compartment and provides reliable contact with positive and negative terminals originally designed for contact with the various batteries positive and negative poles.

This and other valuable objects are achieved by means of a power pack shaped and dimensioned to be inserted in the battery compartment of an electrical device. The top of the power pack is exactly symmetrical with the battery compartment cover which it replaces. The power pack has a pair of flexible terminal prongs that are specially designed to provide a good contact with both the spiral spring-type negative terminal or the positive stationary terminal between which cylindrical batteries are normally inserted.

## BRIEF DESCRIPTION OF THE DRAWING

FIG. 1 is a perspective view of a battery compartment of the prior art;

FIG. 2 is a perspective view of a rechargeable power pack according to the invention;

FIG. 3 is a detail view illustrating contact with a spiral-spring, negative battery terminal;

FIG. 4 is a detail view illustrating contact with a stationary, positive battery terminal;

FIG. 5 is an electrical diagram of the power pack; and

FIG. 6 is a perspective view of an alternate embodiment of the invention.

## DESCRIPTION OF THE PREFERRED EMBODIMENTS OF THE INVENTION

Referring now to the drawing, there is illustrated in FIG. 1 the battery holding compartment 1 of an electri-

2

cal device such as a portable radio, cassette recorder, video game unit or the like. The compartment, shown made of transparent material for the sake of clarity, is designed to hold four AA sized batteries wired in series. Only the first battery 2 is illustrated in phantom lines. A removable cover 3 closes the access 4 to the battery compartment, and is secured by a flange 5 along a section of the lower back edge 6 of the cover and a detent clip 7 mounted along front edge 8. The flange 5 bears against the underside of the cover edge 9 formed in the rear rim section of the compartment 1. The detent strip 7 passes through a notch 10 in a front ledge section 11 of the compartment, then under that ledge. Each battery is inserted between two terminals 12, 13, 14, 15, 16, 17, and 18, 19. The positive poles at the top of the batteries are placed against stationary positive terminals 12, 14, 16, and 18. The negative pole forming the bottom of the batteries are pressed against spiral springs 13, 15, 17, and 19 forming the negative terminals. Straps 20, 21 and 22 between terminals 13 and 14, 15, and 16, and 17 and 18 combine the batteries into a series arrangement. The positive terminal 12 and the negative terminal 19 pass through the front wall 23 of the compartment and are connected by appropriate wiring 24, 25 to the electrical device circuits. The batteries are separated and cradled by parallel ribs 26–30 formed into the bottom of the compartment.

FIG. 2 illustrates a rechargeable power pack 31, according to the invention, that may be substituted for the four batteries and cover 3 into the compartment 1 of FIG. 1. The power pack has a flat top 32 which is exactly symmetrical to the cover 3. It also includes a rear flange 33 and a front detent clip 34 to secure the power pack 31 into the compartment 1. A tray 35 containing a group of rechargeable power cells is welded to the bottom of the cover 32. The tray comprises a peripheral wall 36 and a bottom piece 37. The front section 38 and back section 39 of the peripheral walls are spaced apart from the inner front and back walls of the compartment 1 in order to provide clearance for the spiral-spring terminals 13, 15, 17, and 19. Slots 40–44 in the bottom piece 37 are shaped and positioned to engage the ribs 26–30 in the bottom of the compartment 1 so that the tray 35 occupies the entire depth of the compartment. The median and lower portion of the front section 38 of the peripheral wall is slanted downwardly and inwardly in order to provide additional clearance for the spiral-spring terminals.

Connection between the power pack 31 and the positive and negative terminals 12 and 19 of the compartment are provided by a pair of resiliently flexible prongs 45 and 46 that extend in front of the front section 38 of the peripheral wall. The prongs 45, 46 are identical and are configured to provide a good wiping contact with either the stationary-type terminal 12 or the compressible spiral-spring terminal 19. As illustrated in FIGS. 3 and 4, each prong is formed from a small strip of copper that begins inside the tray where it is connected to the network of power cells. A hairpin-shaped portion 49 of the strip passes over the top rim of the front wall 38 through one of a pair of slots 47, 48 in the flat top 32. After running slightly downward along the upper outer surface of the front wall 38 it bows away from the front wall section 38 to form a semi-circular arcuate portion 50. When the power pack 31 is inserted into the compartment 1, the negative prong 46 slips between spiral coils of the negative spring terminal 19, providing a

EXHIBIT 1 18
EXHIBIT 6
323

3
5,225,760
4

good contact with a terminal after a wiping movement which clears the contacting areas of any oxide or other deposit. The arcuate portion 50 of the other prong 45 comes in contact with the positive stationary terminal 12, and is deflected slightly until its apex 51 bears firmly against the positive terminal 12. The movement of the prong against the terminal also provides a good wiping movement of the contacting surfaces.

The pair of slots 47, 48 in the flat top provide access to the electrical output of the power pack for use in powering accessories or in wiring auxiliary external power packs in parallel with the one placed in the battery compartment. A recharging connector 52 is also mounted on the flat top.

The set of four rechargeable power cells 53–56 inside the tray 35 are wired in series as illustrated in FIG. 5. A diode 57 and resistor 58 wired in parallel connect the positive output of the series of power cells to the positive terminals of the charging connector 52 and the positive prong terminal 45. Since the anode 59 of the diode 57 is connected to the positive output of the power cells any charging current must pass through the current limiting resistor 58. Any current drawn from the power cells flows directly though the diode 57.

In the case where the original batteries are not laid side-by-side but on end in a battery compartment of an electrical device, the power pack according to the invention must have the general configuration 60 illustrated in FIG. 6. The two similar contacting prongs 61, 62 are located at opposite ends of the power pack.

The universal configuration of the power pack terminal prongs, not only will be compatible with the spiral-spring type or stationary type terminals illustrated in this example, but also with a variety of resilient and non-resilient, slotted or integral terminals which may be found in a variety of battery compartments.

While the preferred embodiments of the invention have been described, modifications can be made and other embodiments may be devised without departing from the spirit of the invention and the scope of the appended claims.

What is claimed is:

1. In combination with an electrical device having a compartment shaped and dimensioned to hold a plurality of batteries, said compartment having an opening sized to allow loading and unloading said batteries, terminals protruding from lateral sections of said compartment and wired to carry electrical currents from said batteries to electrical circuits in said device, at least one of said terminals including a resiliently compressible first contact member positioned to forcefully contact a pole of one of said batteries, and at least one of said terminals including a second contact member positioned to contact an opposite pole of said one of said batteries, and a removable cover shaped and dimensioned to close said opening, a rechargeable power supply which comprises:

a housing shaped and dimensions to be introduced into said compartment through said opening;

at least one rechargeable power cell mounted within said housing and having positive and negative poles;

means for feeding a charging current to said at least one power cell when said power supply is in use in said electrical device, said means including a connector positioned on said housing to be accessible when said housing is within said compartment; and

means for connecting said at least one power cell to said terminals.

2. In combination with an electrical device having a compartment shaped and dimensioned to hold a plurality of batteries, said compartment having an opening sized to allow loading and unloading said batteries, terminals protruding from lateral sections of said compartment and wired to carry electrical currents from said batteries to electrical circuits in said device, at least one of said terminals including a resiliently compressible first contact member positioned to forcefully contact a pole of one of said batteries, and at least one of said terminals including a second contact member positioned to contact an opposite pole of said one of said batteries, and a removable cover shaped and dimensioned to close said opening, a rechargeable power supply which comprises:

a housing shaped and dimensioned to be introduced into said compartment through said opening; at least one rechargeable power cell mounted within said housing and having positive and negative poles;

means for feeding a charging current to said at least one power cell; and

means for connecting said at least one power cell to said terminals;

wherein said housing comprises:

a top piece having a flat peripheral border symmetrical with said cover;

a tray bonded to said border, said tray comprising a peripheral wall substantially perpendicular to said border and a bottom piece substantially parallel to said border, said wall being sufficiently spaced-apart from said lateral section to avoid contact with said terminals; and

a pair of resiliently flexible prongs protruding laterally from said housing and positioned to come in contact with a positive one and a negative one of said terminals.

3. The combination of claim 2, wherein said compressible member comprises a spring having a series of spiral coils; and

each of said flexible prongs comprises a strip of metal having an arcuate portion.

4. The combination of claim 3, wherein said compartment comprises a plurality of parallel bottom ribs spaced to position and cradle said at least one power cells, and

said bottom piece has slots positioned and dimensioned to engage said ribs.

5. The combination of claim 2, wherein said means for feeding a charging current comprise:

a two-pole connector mounted into said top piece, said connector being wired to said prongs.

6. The combination of claim 5, wherein said means for connecting comprise:

a resistor and a diode, said diode having an anode terminal and a cathode terminal, said resistor and diode being wired in parallel between said positive terminal and the positive pole of said at least one power cell, the anode terminal of the diode being wired to said positive pole.

7. The combination of claim 4, wherein said peripheral border has a pair of holes providing access to said means for connecting.

8. The combination of claim 3, wherein said strip of metal comprises.

EXHIBIT 1 '19
EXHIBIT 6
324

5,225,760

5

a first section beginning inside said housing and passing through an aperture at the junction of a top section of said peripheral wall and of said peripheral border;

a second section substantially perpendicular to said 5 first section and running downwardly proximate an outer portion of the peripheral wall, said second section having a median area bowing away from said outer portion of the wall in a substantially semi-circular shape forming said arcuate 10 portion.

9. The combination of claim 8, wherein said outer portion of the peripheral wall is slanted downwardly and away from said arcuate portion of the strip of metal.

10. The combination of claim 8, wherein an apex area 15 of the arcuate portion of said flexible prongs is positioned to wipingly come into forced contact with said second contact member.

6

11. The combination of claim 8, wherein the arcuate portion of one of said flexible prongs is positioned to wipingly slip between two of said coils of said resiliently compressible member.

12. The combination of claim 1, wherein said housing has a top shaped and dimensioned to close said opening in lieu of said removable cover, said connector being mounted on said top; and

said means for feeding a charging current comprises a current-limiting circuit between said connector and said least at power cell.

13. The combination of claim 12, wherein said means for connecting comprises two symmetrical flexible prongs protruding from said housing and positioned to come into contact with a positive one and a negative one of said terminals when said power supply is inserted into said compartment.

* * * * *

20

25

30

35

40

45

50

55

60

65

**EXHIBIT 1** 20

**EXHIBIT 6**

**325**

US005260636A

# United States Patent [19]

Leiserson et al.

[11]  Patent Number:       5,260,636

[45]  Date of Patent:   *  Nov. 9, 1993

[54]  PLUG-IN RECHARGEABLE BATTERY UNIT

[75]  Inventors:  Steven G. Leiserson, Ste. C 10845
Wheatlands Ave., Santee, Calif.
92071; Richard L. Groendyke, Yorba
Linda, Calif.

[73]  Assignee:  Steven G. Leiserson, Santee, Calif.

[ * ]  Notice:  The portion of the term of this patent
subsequent to Jul. 6, 2010 has been
disclaimed.

[21]  Appl. No.:  27,181

[22]  Filed:  Mar. 5, 1993

### Related U.S. Application Data

[63]  Continuation-in-part of Ser. No. 887,479, May 22,
1992, Pat. No. 5,192,904, and a continuation-in-part of
Ser. No. 793,123, Nov. 18, 1991, Pat. No. 5,225,760.

[51]  Int. Cl.⁵ ............................................ H02J 7/00
[52]  U.S. Cl. ............................................ 320/2; 429/98
[58]  Field of Search ................. 320/2; 429/96, 97, 98,
429/99, 100

[56]  References Cited

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,109,064 | 8/1978 | Warner et al. | 429/99 X |
| 4,315,364 | 2/1982 | Leffingwell | 320/2 X |
| 4,389,469 | 6/1983 | Nicholls | 429/98 |
| 4,563,627 | 1/1986 | Orban | 320/2 X |
| 5,061,579 | 10/1991 | Ishimoto | 429/96 |
| 5,191,275 | 3/1993 | Singhal | 320/2 |
| 5,200,280 | 4/1993 | Karasa | 429/99 X |
| 5,212,021 | 5/1993 | Smith et al | 429/99 X |

Primary Examiner—Kristine L. Peckman
Attorney, Agent, or Firm—Henri J. A. Charmasson

[57]  ABSTRACT

A rechargeable power pack is shaped and dimensioned
to be inserted in the battery compartment of an electri-
cal device. The top of the power pack is exactly sym-
metrical with the battery compartment cover which it
replaces. The power pack houses rechargeable power
cells, and has a peripheral wall spaced apart from the
sides of the battery compartment mounting the battery
contact terminal. Flexible prongs project from the pe-
ripheral walls to provide a wiping contact with either a
spiral spring negative terminal or a stationary positive
terminal of the compartment. A top mounted connector
allows recharging of the power pack even while in use
on the electrical device. Baffles mounted astride each
flexible prong avert damage to the prong during inser-
tion of the power pack into the battery compartment.

17 Claims, 4 Drawing Sheets



EXHIBIT 2   21
EXHIBIT 6
326



EXHIBIT 2   22
EXHIBIT 6
327

FIG 7

FIG 8

EXHIBIT 2    23

EXHIBIT 6

328



FIG 9

FIG 10

FIG 11

FIG 12

FIG 13

FIG 14

FIG 15

EXHIBIT 2   24

EXHIBIT 6

329



PRIOR ART

FIG. 16

FIG. 17

FIG. 18

FIG. 19

EXHIBIT 2    25
EXHIBIT 6
330

5,260,636

1

PLUG-IN RECHARGEABLE BATTERY UNIT

### PRIOR APPLICATION

This is a continuation-in-part application of copending application serial number 07/887,479, filed May 22, 1992, now U.S. Pat. No. 5,192,901 a continuation-in-part of Ser. No. 07/793,122 filed Nov. 18, 1991 now U.S. Pat. No 3,225,760.

### FIELD OF THE INVENTION

This invention relates to rechargeable power packs for portable electrical devices.

### BACKGROUND OF THE INVENTION

Many portable, battery-powered electronic devices such as radios, pagers, cassette recorders and the like have a covered battery compartment that is sized to accommodate several batteries and to interconnect them in a parallel or a serial configuration. The sides of the compartment have spiral spring terminals designed to forcedly contact the negative, bottom poles of the batteries, and stationary plates to contact their positive top located poles. Batteries, whether rechargeable or not, must be inserted one by one between pairs of such terminals. Other electronic instruments with a higher power draw such as video recorders accept a power pack housing a plurality of rechargeable power cells. A recharged power pack may be conveniently substituted for a run-down one in a few seconds.

It would be advantageous to replace the set of batteries of the first-described type of instrument by a rechargeable power pack which would fit in the battery compartment. However, the presence of the various spiral spring terminals and the battery-separating ribs that usually line the bottom of the battery compartment interfere with the insertion of such power packs.

It would be even more advantageous to replace either the non-rechargeable batteries or the rechargeable power pack of an electronic device with a kit comprising rechargeable cells and a circuit allowing recharging during or after operation of the device.

One of the problems encountered in making substitution of non-rechargeable power cells with a like number of rechargeable ones is the lesser rating voltage of the latter which may result in unacceptable power supply voltage levels.

Flexible contact members used in power supply packages can be damaged during insertion into an electronic device if they are caught by the surrounding structure. There is a need for more reliable contact assemblies.

### SUMMARY OF THE INVENTION

The principal and secondary object of the invention are to provide a replacement for a set of batteries normally required to energize a portable electrical device by a single, rechargeable power pack or set of rechargeable batteries that fit within the battery compartment and provide reliable contact with positive and negative terminals originally designed for contact with the various batteries positive and negative poles.

This and other valuable objects are achieved in a first approach, by means of a power pack shaped and dimensioned to be inserted in the battery compartment of an electrical device. The top of the power pack is exactly symmetrical with the battery compartment cover which it replaces. The power pack has a pair of flexible terminal prongs that are specially designed to provide a

2

good contact with either the spiral spring-type negative terminal or the positive stationary terminal found in many devices between which cylindrical batteries are normally inserted. In a second approach, rechargeable substitute batteries are provided with a substitute battery compartment cover that include an additional battery station and an in-line recharging circuitry. Lateral baffle protecting the contact members of a power supply package during insertion into an electronic device are disclosed.

### BRIEF DESCRIPTION OF THE DRAWING

FIG. 1 is a perspective view of a battery compartment of the prior art;

FIG. 2 is a perspective view of a rechargeable power pack according to the invention;

FIG. 3 is a detail view illustrating contact with a spiral-spring, negative battery terminal;

FIG. 4 is a detail view illustrating contact with a stationary, positive battery terminal;

FIG. 5 is an electrical diagram of the power pack;

FIG. 6 is a perspective view of an alternate embodiment of the invention;

FIG. 7 is a perspective view of a rechargeable battery

FIG. 8 is a bottom plan view of the battery compartment cover assembly;

FIG. 9 is a perspective view of a first alternate conductor assembly;

FIG. 10 is a cross-sectional view of a customized contact assembly;

FIG. 11 is a perspective view of a second alternate conductor assembly;

FIG. 12 is a perspective view of a third alternate conductor assembly;

FIG. 13 is a perspective view of a modified flexible strip;

FIG. 14 is a schematic of a first embodiment of the battery kit;

FIG. 15 is a schematic of a second embodiment thereof;

FIG. 16 is a detail side view of the prior art contact assembly;

FIG. 17 is a detail view of an improved contact assembly;

FIG. 18 is a perspective view of the preferred embodiment of the contact assembly; and

FIG. 19 is a perspective view of an alternate embodiment of the contact assembly.

### DESCRIPTION OF THE PREFERRED EMBODIMENT OF THE INVENTION

Referring now to the drawing, there is illustrated in FIG. 1 the battery-holding compartment 1 of an electrical device such as a portable radio, cassette recorder, video game unit or the like. The compartment, shown made of transparent material for the sake of clarity, is designed to hold four AA-sized batteries wired in series. Only the first battery 2 is illustrated in phantom lines. A removable cover 3 closes the access 4 to the battery compartment, and is secured by a flange 5 along a section of the lower back edge 6 of the cover and a detent clip 7 mounted along the front edge 8. The flange 5 bears against the underside of a ledge 9 formed in the rear rim section of the compartment 1. The detent strip 7 passes through a notch 10 in a front ledge section 11 of the compartment, then under that ledge. Each battery is inserted between two terminals 12, 13, 14, 56, 16,

EXHIBIT 2    26

EXHIBIT 6

331

3

4

17, and 18. 19. The positive poles at the top of the batteries are placed against stationary positive terminals 12, 14, 16, and 18. The negative pole forming the bottom of the batteries are pressed against spiral springs 13, 15, 17, and 19 forming the negative terminals. Straps 20, 21 and 22 between terminals 13 and 14, 15, and 16, and 17 and 18 combine the batteries into a series arrangement. The positive terminal 12 and the negative terminal 19 pass through the front wall 23 of the compartment and are connected by appropriate wiring 24, 25 to the electrical device circuits. The batteries are separated and cradled by parallel ribs 26–30 formed into the bottom of the compartment.

FIG. 2 illustrates a rechargeable power pack 31, according to the invention, that may be substituted for the four batteries and cover 3 into the compartment 1 of FIG. 1. The power pack has a top 32 the periphery of which is exactly symmetrical to the periphery of cover 3. It also includes a rear flange 33 and a front detent clip 34 to secure the power pack 31 into the compartment 1. A tray 35 containing a group of rechargeable power cells is welded to the bottom of the cover 32. The tray comprises a peripheral wall 36 and a bottom piece 37. The front section 38 and back section 39 of the peripheral walls are spaced apart from the inner front and back walls of the compartment 1 in order to provide clearance for the spiral-spring terminals 13, 15, 17, and 19. Slots 40–44 in the bottom piece 37 are shaped and positioned to engage the ribs 26–30 in the bottom of the compartment 1 so that the tray 35 occupies the entire depth of the compartment. The median and lower portion of the front section 38 of the peripheral wall is slanted downwardly and inwardly in order to provide additional clearance for the spiral-spring terminals.

Connection between the power pack 31 and the positive and negative terminals 12 and 19 of the compartment are provided by a pair of resiliently flexible prongs 45 and 46 that extend in front of the front section 38 of the peripheral wall. The prongs 45, 46 are identical and are configured to provide a good wiping contact with either the stationary-type terminal 12 or the compressible spiral-spring terminal 19 as illustrated in FIGS. 3 and 4. Each prong is formed from a small strip of copper that begins inside the tray where it is connected to the network of power cells. A hairpin-shaped portion 49 of the strip passes over the top rim of the front wall 38 through one of a pair of slots 47, 48 in the flat top 32. After running shortly downward along the upper outer surface of the front wall 38 it bows away from the front wall section 38 to form a semi-circular arcuate portion 50. When the power pack 31 is inserted into the compartment 1, the negative prong 46 slips between spiral coils of the negative spring terminal 19, providing a good contact with a terminal after a wiping movement which clears the contacting areas of any oxide or other deposit. The arcuate portion 50 of the other prong 45 comes in contact with the positive stationary terminal 12, and is deflected slightly until its apex 51 bears firmly against the positive terminal 12. The movement of the prong against the terminal also provides a good wiping movement of the contacting surfaces.

The pair of slots 47, 48 in the flat top provide access to the electrical output of the power pack for use in powering accessories or in wiring auxiliary external power packs in parallel with the one placed in the battery compartment. A recharging connector 52 is also mounted on the flat top

The set of four rechargeable power cells 53–56 inside the tray 35 are wired in series as illustrated in FIG. 5. A diode 57 and resistor 58 wired in parallel connect the positive output of the series of power cells to the positive terminals of the charging connector 52 and the positive prong terminal 45. Since the anode 59 of the diode 57 is connected to the positive output of the power cells any charging current must pass through the current limiting resistor 58. Any current drawn from the power cells flows directly through the diode 57.

In the case where the original batteries are not laid side-by-side but on end in a battery compartment of an electrical device, the power pack according to the invention must have the general configuration 60 illustrated in FIG. 6. The two contacting prongs 61, 62 are located at opposite ends of the power pack.

One of those prongs 61 has a distal end 63 that curves inwardly to penetrate a lower section of the side wall 64 where it remains embedded for better stability. Due to the inwardly and downwardly orientation of the side wall 64, this type of prong provides effective contact with either types of terminals.

The universal configuration of the power pack terminal prongs, not only will be compatible with the spiral-spring type or stationary type terminals illustrated in this example, but also with a variety of resilient and non-resilient, slotted or integral terminals which may be found in a variety of battery compartments.

FIGS. 7–15 illustrate an alternate approach to the power pack consisting essentially in the replacement of the non-rechargeable batteries in the battery compartment 65 of an electrical device 66 by a set 67 of similarly sized rechargeable batteries, and replacement of the original battery compartment cover by an assembly 68 specially configured to allow recharging of the battery set 67 either during or after operation of the device 66.

The assembly 68 comprises a substantially planar support 69 that is shaped and dimensioned to mimic the original battery compartment cover of the device and effectively close the opening 70 of that compartment in place of the original cover. As more specifically illustrated in FIGS. 7 and 8, the planar support is connected to the battery compartment and the batteries by a detachable flexible strip 71 which at a first end 72 is permanently attached to the underside of the planar support 69, and includes at its distal end 73 two tips 74, 75 that are shaped and dimensioned to be inserted between the poles of two batteries and their corresponding terminals in the walls of the compartment 65.

In order to compensate for the lower voltage rating, typically 1.2 volt, of NiCad batteries compared to the voltage rating, typically 1.5 volt, of an alkaline battery, an additional battery station 76 is provided in the upper surface of the planar support 69. A socket 77 also mounted on the upper surface of the planar support is designed to receive a jack connector of a recharging current source. An electrical circuit 78 including a charging current limiting resistor 79 and a by-pass diode 80 interconnects the socket 77 and the additional battery station 76 to three connection points 81, 82 and 83 on the proximal end section 72 of the flexible strip 71.

In this embodiment, the flexible strip 72 is made from a laminated sheet of insulating material, as is commonly used in the fabrication of flexible cables, upon which three electrical conductors 84, 85, and 86 have been printed according to well-known techniques. A part 87 of the proximal end section of the flexible strip is also used to mount the electrical circuit 78 and to carry

EXHIBIT 2   27   EXHIBIT 6
332

5,260,636

appropriate wiring conductors between the additional battery station terminals 88, 89, the socket 77, the resistor 79, and the diode 80. The flexible strip 72 is hinged along a first fold line 90 parallel and proximal to the front edge 91 of the planar support 69. The distal end is also folded along a second fold line 92 so that when the contacting tips 74 and 75 are inserted between the poles and corresponding terminals of the two end batteries 93, 94 of the set 67, the assembly assumes the Z-shaped configuration illustrated in FIG. 7. This particular arrangement allows for easy and convenient insertion of the contacting tips 74, 75 and closure and reopening of the battery compartment 65. As more specifically shown in the diagram of FIG. 14, the first tip 74 which contacts the positive pole of battery 93 and the positive terminal 95 of the compartment has a first pole-contacting area 97 that is connected to conductor 84 on one side of the tip 74, and a first terminal contacting area 98 connected to conductor 85 on the opposite face of the tip 74. The first pole-contacting area 97 and the first terminal-contacting area 98 are insulated by the thickness of the tip 74. By contrast, the second pole-contacting area 99 on one side of the second tip 75 and the second terminal-contacting area 100 on the opposite side of that tip are both connected to conductor 86 by means of a feedthrough 101, or via other appropriate technique.

In the event that the compartment 65 houses an odd number of batteries, the two tips must be positioned on opposite sides of the compartment. This is achieved by separating the distal halves 102, 103 of the flexible strip, and folding one half 103 along a third fold line 104 as illustrated in FIG. 13.

When a limited number of batteries are reused by the device, the additional battery station 76 of FIG. 1 may be omitted since the voltage difference between the rechargeable type and non-rechargeable type of batteries may be insignificant. FIG. 15 illustrates the wiring of such a simplified assembly where only three batteries are used, necessitating placement of the tips at opposite sides of the battery compartment. In the embodiment illustrated by the schematic of FIG. 14, the diode 80 is used to by-pass the current limiting resistor 79 when the current necessary to operate the device is drawn from the rechargeable batteries. The schematic of FIG. 15 illustrates an alternate arrangement wherein the socket 77 incorporates a switch 105 that acts in lieu of the diode 80 of the alternate embodiment to short-circuit the resistor 79 when the operating current is drawn directly from the battery set and not from the remote charging source. The switch 105 is opened when the recharge current source jack is inserted into the socket, thus placing the resistor 79 in the recharging current path to the batteries.

Illustrated in FIGS. 9, 11 and 12 are alternate embodiments of the flexible connection between the substitute battery compartment cover and the battery poles and terminals, using separate wires and cables instead of a printed flexible strip. In the embodiment of FIG. 9, the contacting tips 74, 75 of the previously described embodiments are replaced by a cap 106 and a disc 107. The cap 106 is shaped and dimensioned to fit over the positive poles of the batteries. The disc 107 is designed to lie against the negative pole of the batteries. The caps have an internal, battery pole-contacting element 108 which is separated from the surrounding terminal-contacting element 109 by an insulator 110. In the embodiment illustrated in FIG. 11, the cap and disc are separated and

positioned by a small strip 111 of insulating rigid material which facilitates the selection of the battery connections and their positioning into the battery compartment.

In the embodiment of FIG. 12, pole-contacting areas and terminal-contacting areas are printed on a substrate 112 in a manner similar to the technique used on the flexible strip of the previously described embodiment of the invention. In this embodiment, the tips 112 and 113 are positioned for insertion in opposite sides of the compartment housing an odd number of rechargeable batteries.

In order to prevent use of the battery-recharging assembly according to this invention with non-rechargeable batteries, the positive pole-contacting area of a cap or tip may be provided with an insulated nib 115 which projects from the center of the pole-contacting area and thus prevent contact between the battery pole 116 and its contacting area 117 unless the positive pole of the battery has a cavity 118 positioned to engage the nib 115. Such a cavity would be provided exclusively on rechargeable batteries. In such a case, the specially configured batteries and the recharging assembly would be provided as a complete replacement kit for the rechargeable batteries.

FIG. 16 illustrates the problematic bending of a flexible prong 119 mounted on the side of a power supply pack 120 during insertion into the battery compartment 121 of an electronic device when the prong is caught by the edge 122 of the compartment.

The problem is corrected by the improvement illustrated in FIGS. 17 and 18 where the distal unattached end 123 of an improved prong 124 is shielded by a baffle 125. The baffle is mounted next to the prong in a vertical plane parallel to it. The prong is formed to provide a oblique linear section 126 between the arcuate contact section 127 and the distal tip 123. This linear section of the prong forms a smooth sliding ramp for any contact between the edge 122 of the compartment and the prong. The root 128 of the prong is preferably spaced slightly apart from all the vertical lateral wall 129 of the power supply pack in order to increase the clearance for the inward flexible movement of the prong upon contact with the edge 22 of the compartment.

FIG. 18 illustrates the preferred embodiment of the prong assembly suitable for use on the power pack illustrated in FIG. 2; wherein a pair of baffles 129, 130 are used astride the prong 124.

In the alternate embodiment of the prong assembly illustrated in FIG. 19, the distal end 131 of the prong 132 nests into a cavity 133 along the lower edge of the housing side wall 143.

While the preferred embodiments of the invention have been described, modifications can be made and other embodiments may be devised without departing from the spirit of the invention and the scope of the appended claims.

What is claimed is:

1. In combination with an electrical device having a compartment shaped and dimensioned to hold a plurality of batteries, said compartment having an opening size to allow loading and unloading said batteries, terminals protruding from lateral sections of said compartment and wired to carry electrical currents from said batteries to electrical circuits in said device, a first one of said terminals including a resiliently compressible first contact member positioned to forcefully contact a pole of one of said batteries, and a second one of said

EXHIBIT 2  28          EXHIBIT 6
                                          333

5,260,636

7

terminals including a second contact member positioned to contact an opposite pole of said one of said batteries, and a removable cover shaped and dimensioned to close said opening, a rechargeable power supply which comprises:

a housing shaped and dimensioned to be at least partially introduced into said compartment through said opening;

at least one rechargeable power cell mounted within said housing and having positive and negative poles;

means for feeding a charging current to said at least one power cell when said power supply is in use in said electrical device, which means including a connector positioned on said housing to be accessible when said housing is within said compartment;

means for connecting said at least one cell to said terminals, including at least one resiliently compressible prong protruding laterally from said housing and positioned to come in contact with one of said terminals; and

means for preventing damage to said prong when said power supply is introduced into said compartment.

2. The combination of claim 1, wherein said compressible prong comprises a strip of metal having an arcuate portion.

3. The combination of claim 2, wherein an apex area of the arcuate portion of said flexible prongs is positioned to wipingly come into forced contact with one of said terminals.

4. The combination of claim 1, wherein said means for connecting further comprise:

a resistor and a diode, said diode having an anode terminal and a cathode terminal, said resistor and diode being wired in parallel between one of said terminals and the positive pole of said at least one power cell, the anode terminal of the diode being wired to said positive pole.

5. The combination of claim 1, wherein said housing has a top including a peripheral section shaped and dimensioned to close said opening in lieu of said removable cover, said connector being mounted on said top; and

said means for feeding a charging current comprises a current-limiting circuit between said connector and said at least one power cell.

6. The combination of claim 1, wherein said means for preventing damage to said prong comprise at least one rigid baffle commensurate with and extending along said prong.

7. In combination with an electrical device having a compartment shaped and dimensioned to hold a plurality of batteries, said compartment having an opening sized to allow loading and unloading said batteries, terminals protruding from lateral sections of said compartment and wired to carry electrical currents from said batteries to electrical circuits in said device, a first one of said terminals including a resiliently compressible first contact member positioned to forcefully contact a pole of one of said batteries, and a second one of said terminals including a second contact member positioned to contact an opposite pole of said one of said batteries, and a removable cover shaped and dimensioned to close said opening, a rechargeable power supply which comprises:

a housing shaped and dimensioned to be at least partially introduced into said compartment through said opening, and including a bottom piece and a peripheral wall;

8

at least one rechargeable power cell mounted within said housing and having positive and negative poles;

means for feeding a charging current to said at least one power cell when said power supply is in use in said electrical device, said means including a connector positioned on said housing to be accessible when said housing is within said compartment; and

means for connecting said at least one cell to said terminals;

at least one resiliently compressible prong protruding laterally from said housing and positioned to come in contact with one of said terminals; and

means for preventing damage to said prong when said housing is introduced into said compartment.

8. The combination of claim 7, wherein said compressible member comprises a spring having a series of spiral coils; and

said compressible prong comprises a strip of metal having an arcuate portion.

9. The combination of claim 8, wherein said compartment comprises a plurality of parallel bottom ribs spaced to position and cradle said at least one power cell; and

said bottom piece has slots positioned and dimensioned to engage said ribs.

10. The combination of claim 8, wherein said strip of metal comprises:

a first section beginning inside said housing and passing through an aperture at a junction of a top section of said peripheral wall and of said border;

a second section substantially perpendicular to said first section and running downwardly proximate an outer portion of the peripheral wall, said second section having a median area bowing away from said outer portion of the wall in a substantially semi-circular shape forming said arcuate portion.

11. The combination of claim 10, wherein said outer portion of the peripheral wall is slanted downwardly and away from said arcuate portion of the strip of metal.

12. The combination of claim 10 wherein an apex area of the arcuate portion of said compressible prong is positioned to wipingly come into forced contact with said second contact member.

13. The combination of claim 10, wherein the arcuate portion of said prong compressible is positioned to wipingly slip between two of said coils of said resiliently compressible member.

14. The combination of claim 7, wherein said means for connecting comprise:

a resistor and a diode, said diode having an anode terminal and a cathode terminal, said resistor and diode being wired in parallel between one of said terminals and the positive pole of said at least one power cell, the anode terminal of the diode being wired to said positive pole.

15. The combination of claim 7, wherein said means for preventing damage to said prong comprise at least one rigid baffle commensurate with and extending along said prong.

16. In a power supply package shaped and dimensioned to be inserted into an electronic device, said package having at least one compressible prong positioned on one side of said package for interconnection with an electrical terminal in said electronic device, an improvement, for preventing damage to said prong, which comprises at least one rigid baffle extending alongside said prong.

17. The improvement of claim 16, wherein said at least one baffle comprises a pair of baffles placed astride said prong.

* * * * *

EXHIBIT 2   29
EXHIBIT 6
334

US005426358A

# United States Patent [19]

## Leiserson et al.

[11]  Patent Number:  5,426,358

[45]  Date of Patent:  * Jun. 20, 1995

[54]  PLUG-IN RECHARGEABLE BATTERY UNIT

[75]  Inventors: Steven G. Leiserson, 10845
Wheatlands Ave., Santee, Calif.
92071; Richard L. Groendyke, Yorba
Linda, Calif.

[73]  Assignee:  Steven G. Leiserson, Santee, Calif.

[ * ]  Notice:  The portion of the term of this patent
subsequent to Jul. 6, 2010 has been
disclaimed.

[21]  Appl. No.: 111,929

[22]  Filed:  Aug. 26, 1993

### Related U.S. Application Data

[63]  Continuation of Ser. No. 27,181, Mar. 5, 1993, Pat. No.
5,260,636, and a continuation-in-part of Ser. No.
887,479, May 22, 1992, Pat. No. 5,192,904, and a con-
tinuation-in-part of Ser. No. 793,122, Nov. 18, 1991,
Pat. No. 5,225,760.

[51]  Int. Cl.⁶ ............................................. H01M 10/46
[52]  U.S. Cl. ....................................................... 320/2
[58]  Field of Search ...................... 320/2, 5, 6, 15, 17;
429/96–100

[56]  References Cited

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,757,194 | 9/1973 | Weber et al. | 320/2 |
| 4,389,469 | 6/1983 | Nicholls | 429/98 |

| | | | |
|---|---|---|---|
| 5,015,546 | 5/1991 | Dulaney et al. | 429/99 |
| 5,038,093 | 8/1991 | Edwards et al. | 320/2 |
| 5,061,579 | 10/1991 | Ishimoto | 429/96 |
| 5,200,280 | 4/1993 | Karasa | 429/99 X |
| 5,212,021 | 5/1993 | Smith et al. | 429/99 X |
| 5,260,636 | 11/1993 | Leiserson et al. | 320/2 |

*Primary Examiner*—Thomas M. Dougherty
*Assistant Examiner*—E. Tso
*Attorney, Agent, or Firm*—Henri J. A. Charmasson; John
D. Buchaca

[57]  ABSTRACT

A rechargeable power pack is shaped and dimensioned
to be inserted in the battery compartment of an electri-
cal device. The top of the power pack is exactly sym-
metrical with the battery compartment cover which it
replaces. The power pack houses rechargeable power
cells, and has a peripheral wall spaced apart from the
sides of the battery compartment mounting the battery
contact terminal. Flexible prongs project from the pe-
ripheral walls to provide a wiping contact with either a
spiral spring negative terminal or a stationary positive
terminal of the compartment. A top mounted connector
allows recharging of the power pack even while in use
on the electrical device. Baffles mounted astride each
flexible prong avert damage to the prong during inser-
tion of the power pack into the battery compartment.

9 Claims, 4 Drawing Sheets



EXHIBIT 3    30
EXHIBIT 6
335

Case 3:00-cv-00716-JM-JFS   Document 19   Filed 08/03/00   Page 53 of 84



*PRIOR ART*

*FIG. 1*

FIG. 3

FIG. 2

FIG. 4

FIG. 5

FIG. 6

EXHIBIT 3

EXHIBIT 6

336

31



FIG 7

FIG 8

EXHIBIT 3.

EXHIBIT 6
337

**U.S. Patent**     June 20, 1995     Sheet 3 of 4     **5,426,358**



FIG 9

FIG 10

FIG 11

FIG 12

FIG 14

FIG 13

FIG 15

EXHIBIT 6
338

EXHIBIT 3 33



PRIOR ART

FIG. 16

FIG. 17

FIG. 18

FIG. 19

EXHIBIT 3   34
EXHIBIT 6
339

5,426,358

1

## PLUG-IN RECHARGEABLE BATTERY UNIT

This is a continuation of application Ser. No. 027,181, filed Mar. 5, 1993, now U.S. Pat. No. 5,260,636, a continuation-in-part application of application Ser. No. 07/887,479, filed May 22, 1992, now U.S. Pat. No. 5,192,904, a continuation-in-part of Ser. No. 793,122 filed Nov. 18, 1991, now U.S. Pat. No. 5,225,760.

### FIELD OF THE INVENTION

This invention relates to rechargeable power packs for portable electrical devices.

### BACKGROUND OF THE INVENTION

Many portable, battery-powered electronic devices such as radios, pagers, cassette recorders and the like have a covered battery compartment that is sized to accommodate several batteries and to interconnect them in a parallel or a serial configuration. The sides of the compartment have spiral spring terminals designed to forcedly contact the negative, bottom poles of the batteries, and stationary plates to contact their positive top located poles. Batteries, whether rechargeable or not, must be inserted one by one between pairs of such terminals. Other electronical instruments with a higher power draw such as video recorders accept a power pack housing a plurality of rechargeable power cells. A recharged power pack may be conveniently substituted for a run-down one in a few seconds.

It would be advantageous to replace the set of batteries of the first-described type of instrument by a rechargeable power pack which would fit in the battery compartment. However, the presence of the various spiral spring terminals and the battery-separating ribs that usually line the bottom of the battery compartment interfere with the insertion of such power packs.

It would be even more advantageous to replace either the non-rechargeable batteries or the rechargeable power pack of an electronic device with a kit, comprising rechargeable cells and a circuit allowing recharging during or after operation of the device and delete the word "copending" at the end of the line. On page 3, line 7, add a comma before "comprising"; and on line 9, add, and dimensioned to nest into the device battery compartment in lieu of the batteries or power pack, and does not need to be removed from the compartment during the recharging operation-after "device".

One of the problems encountered in making substitution of non-rechargeable power cells with a like number of rechargeable ones is the lesser rating voltage of the latter which may result in unacceptable power supply voltage levels.

Flexible contact members used in power supply packages can be damaged during insertion into an electronic device if they are caught by the surrounding structure. There is a need for more reliable contact assemblies.

### SUMMARY OF THE INVENTION

The principal and secondary object of the invention are to provide a replacement for a set of batteries normally required to energize a portable electrical device by a single, rechargeable power pack or set of rechargeable batteries that fit within the battery compartment and provide reliable contact with positive and negative terminals originally designed for contact with the various batteries positive and negative poles.

2

This and other valuable objects are achieved in a first approach, by means of a power pack shaped and dimensioned to be inserted in the battery compartment of an electrical device. The top of the power pack is exactly symmetrical with the battery compartment cover which it replaces. The power pack has a pair of flexible terminal prongs that are specially designed to provide a good contact with either the spiral spring,type negative terminal or the positive stationary terminal found in many devices between which cylindrical batteries are normally inserted. In a second approach, rechargeable substitute batteries are provided with a substitute battery compartment cover that include an additional battery station and an in-line recharging circuitry. Lateral baffle protecting the contact members of a power supply package during insertion into an electronic device are disclosed.

### BRIEF DESCRIPTION OF THE DRAWING

FIG. 1 is a perspective view of a battery compartment of the prior art;

FIG. 2 is a perspective view of a rechargeable power pack according to the invention;

FIG. 3 is a detail view illustrating contact with a spiral-spring, negative battery terminal;

FIG. 4 is a detail view illustrating contact with a stationary, positive battery terminal;

FIG. 5 is an electrical diagram of the power pack;

FIG. 6 is a perspective view of an alternate embodiment of the invention;

FIG. 7 is a perspective view of a rechargeable battery kit;

FIG. 8 is a bottom plan view of the battery compartment cover assembly;

FIG. 9 is a perspective view of a first alternate conductor assembly;

FIG. 10 is a cross-sectional view of a customized contact assembly;

FIG. 11 is a perspective view of a second alternate conductor assembly;

FIG. 12 is a perspective view of a third alternate conductor assembly;

FIG. 13 is a perspective view of a modified flexible strip;

FIG. 14 is a schematic of a first embodiment of the battery kit;

FIG. 15 is a schematic of a second embodiment thereof;

FIG. 16 is a detail side view of the prior art contact assembly;

FIG. 17 is a detail view of an improved contact assembly;

FIG. 18 is a perspective view of the preferred embodiment of the contact assembly; and

FIG. 19 is a perspective view of an alternate embodiment of the contact assembly.

### DESCRIPTION OF THE PREFERRED EMBODIMENT OF THE INVENTION

Referring now to the drawing, there is illustrated in FIG. 1 the battery-holding compartment 1 of an electrical device such as a portable radio, cassette recorder, video game unit or the like. The compartment, shown made of transparent material for the sake of clarity, is designed to hold four AA-sized batteries wired in series. Only the first battery 2 is illustrated in phantom lines. A removable cover 3 closes the access 4 to the battery compartment, and is secured by a flange 5 along a sec-

EXHIBIT 3   35   EXHIBIT 6
340

tion of the lower back edge 6 of the cover and a detent clip 7 mounted along the front edge 8. The flange 5 bears against the underside of a ledge 9 formed in the rear rim section of the compartment 1. The detent-strip 7 passes through a notch 10 in a front ledge section 11 of the compartment, then under that ledge. Each battery is inserted between two terminals 12, 13, 14, 56, 16, 17, and 18, 19. The positive poles at the top of the batteries are placed against stationary positive terminals 12, 14, 16, and 18. The negative pole forming the bottom of the batteries are pressed against spiral springs 13, 15, 17, and 19 forming the negative terminals. Straps 20, 21 and 22 between terminals 13 and 14, 15, and 16, and 17 and 18 combine the batteries into a series arrangement. The positive terminal 12 and the negative terminal 19 pass through the front wall 23 of the compartment and are connected by appropriate wiring 24, 25 to the electrical device circuits. The batteries .are separated and cradled by parallel ribs 26–30 formed into the bottom of the compartment.

FIG. 2 illustrates a rechargeable power pack 31, according to the invention, that may be substituted for the four batteries and cover 3 into the compartment 1 of FIG. 1. The power pack has a top 32 the periphery of which is exactly symmetrical to the periphery of cover 3. It also includes a rear flange 33 and a front detent clip 34 to secure the power pack 31 into the compartment 1. A tray 35 containing a group of rechargeable power cells is welded to the bottom of the cover 32. The tray comprises a peripheral wall 36 and a bottom piece 37. The front section 38 and back section 39 of the peripheral walls are spaced apart from the inner front and back walls of the compartment 1 in order to provide clearance for the spiral-spring terminals 13, 15, 17, and 19. Slots 40–44 in the bottom piece 37 are shaped and positioned to engage the ribs 26–30 in the bottom of the compartment 1 so that the tray 35 occupies the entire depth of the compartment. The median and lower portion of the front section 38 of the peripheral wall is slanted downwardly and inwardly in order to provide additional clearance for the spiral-spring terminals.

Connection between the power pack 31 and the positive and negative terminals 12 and 19 of the compartment are provided by a pair of resiliently flexible prongs 45 and 46 that extend in front of the front section 38 of the peripheral wall. The prongs 45, 46 are identical and are configured to provide a good wiping contact with either the stationary-type terminal 12 or the compressible spiral-spring terminal 19 as illustrated in FIGS. 3 and 4. Each prong is formed from a small strip of copper that begins inside the tray where it is connected to the network of power cells. A hairpin-shaped portion 49 of the strip passes over the top rim of the front wall 38 through one of a pair of slots 47, 48 in the flat top 32. After running shortly downward along the upper outer surface of the front wall 38 it bows away from the front wall section 38 to form a semi-circular arcuate portion 50. When the power pack 31 is inserted into the compartment 1, the negative prong 46 slips between spiral coils of the negative spring terminal 19, providing a good contact with a terminal after a wiping movement which clears the contacting areas of any oxide or other deposit. The arcuate portion 50 of the other prong 45 comes in contact with the positive stationary terminal 12, and is deflected slightly until its apex 51 bears firmly against the positive terminal 12. The movement of the prong against the terminal also provides a good wiping movement of the contacting surfaces.

The pair of slots 47, 48 in the flat top provide access to the electrical output of the power pack for use in powering accessories or in wiring auxiliary external power packs in parallel with the one placed in the battery compartment. A recharging connector 52 is also mounted on the flat top.

The set of four rechargeable power cells 53–56 inside the tray 35 are wired in series as illustrated in FIG. 5. A diode 57 and resistor 58 wired in parallel connect the positive output of the series of power cells to the positive terminals of the charging connector 52 and the positive prong terminal 45. Since the anode 59 of the diode 57 is connected to the positive output of the power cells any charging current must pass through the current limiting resistor 58. Any current drawn from the power cells flows directly through the diode 57.

In the case where the original batteries are not laid side-by-side but on end in a battery compartment of an electrical device, the power pack according to the invention must have the general configuration 60 illustrated in FIG. 6. The two contacting prongs 61, 62 are located at opposite ends of the power pack.

One of those prongs 61 has a distal end 63 that curves inwardly to penetrate a lower section of the side wall 64 where it remains embedded for better stability. Due to the inwardly and downwardly orientation of the side wall 64, this type of prong provides effective contact with either types of terminals.

The universal configuration of the power pack terminal prongs, not only will be compatible with the spiral-spring type or stationary type terminals illustrated in this example, but also with a variety of resilient and non-resilient, slotted or integral terminals which may be found in a variety of battery compartments.

FIGS. 7–15 illustrate an alternate approach to the power pack consisting essentially in the replacement of the non-rechargeable batteries in the battery compartment 65 of an electrical device 66 by a set 67 of similarly sized rechargeable batteries, and replacement of the original battery compartment cover by an assembly 68 specially configured to allow recharging of the battery set 67 either during or after operation of the device 66.

The assembly 68 comprises a substantially planar support 69 that is shaped and dimensioned to mimic the original battery compartment cover of the device and effectively close the opening 70 of that compartment in place of the original cover. As more specifically illustrated in FIGS. 7 and 8, the planar support is connected to the battery compartment and the batteries by a detachable flexible strip 71 which at a first end 72 is permanently attached to the underside of the planar support 69, and includes at its distal end 73 two tips 74, 75 that are shaped and dimensioned to be inserted between the poles of two batteries and their corresponding terminals in the walls of the compartment 65.

In order to compensate for the lower voltage rating, typically 1.2 volt, of NiCad batteries compared to the voltage rating, typically 1.5 volt, of an alkaline battery, an additional battery station 76 is provided in the upper surface of the planar support 69. A socket 77 also mounted on the upper surface of the planar support is designed to receive a jack connector of a recharging current source. An electrical circuit 78 including a charging current limiting resistor 79 and a by-pass diode 80 interconnects the socket 77 and the additional battery station 76 to three connection points 81, 82 and 83 on the proximal end section 72 of the flexible strip 71.

EXHIBIT 3   36
EXHIBIT 6
341

5

5,426,358

6

In this embodiment, the flexible strip 72 is made from a laminated sheet of insulating material, as is commonly used in the fabrication of flexible cables, upon which three electrical conductors 84, 85, and 86 have been printed according to well-known techniques. A part 87 of the proximal end section of the flexible strip is also used to mount the electrical circuit 78 and to carry appropriate wiring conductors between the additional battery station terminals 88, 89, the socket 77, the resistor 79, and the diode 80. The flexible strip 72 is hinged along a first fold line 90 parallel and proximal to the front edge 91 of the planar support 69. The distal end is also folded along a second fold line 92 so that when the contacting tips 74 and 75 are inserted between the poles and corresponding terminals of the two end batteries 93, 94 of the set 67, the assembly assumes the Z-shaped configuration illustrated in FIG. 7. This particular arrangement allows for easy and convenient insertion of the contacting tips 74, 75 and closure and reopening of the battery compartment 65. As more specifically shown in the diagram of FIG. 14, the first tip 74 which contacts the positive pole of battery 93 and the positive terminal 95 of the compartment has a first pole-contacting area 97 that is connected to conductor 84 on one side of the tip 74 and a first terminal contacting area 98 connected to conductor 85 on the opposite face of the tip 74. The first pole-contacting area 97 and the first terminal-contacting area 98 are insulated by the thickness of the tip 74. By contrast, the second pole-contacting area 99 on one side of the second tip 75 and a second terminal-contacting area 100 on the opposite side of that tip are both connected to conductor 86 by means of a feedthrough 101, or via other appropriate technique.

In the event that the compartment 65 houses an odd number of batteries, the two tips must be positioned on opposite sides of the compartment. This is achieved by separating the distal halves 102, 103 of the flexible strip, and folding one half 103 along a third fold line 104 as illustrated in FIG. 13.

When a limited number of batteries are reused by the device, the additional battery station 76 of FIG. 1 may be omitted since the voltage difference between the rechargeable type and non-rechargeable type of batteries may be insignificant. FIG. 15 illustrates the wiring of such a simplified assembly where only three batteries are used, necessitating placement of the tips at opposite sides of the battery compartment. In the embodiment illustrated by the schematic of FIG. 14, the diode 80 is used to by-pass the current limiting resistor 79 when the current necessary to operate the device is drawn from the rechargeable batteries. The schematic of FIG. 15 illustrates an alternate arrangement wherein the socket 77 incorporates a switch 105 that acts in lieu of the diode 80 of the alternate embodiment to short-circuit 55 the resistor 79 when the operating current is drawn directly from the battery set and not from the remote charging source. The switch 105 is opened when the recharge current source jack is inserted into the socket, thus placing the resistor 79 in the recharging current path to the batteries.

Illustrated in FIGS. 9, 11 and 12 are alternate embodiments of the flexible connection between the substitute battery compartment cover and the battery poles and terminals, using separate wires and cables instead of a printed flexible strip. In the embodiment of FIG. 9, the contacting tips 74, 75 of the previously described embodiments are replaced by a cap 106 and a disc 107. The

cap 106 is shaped and dimensioned to fit over the positive poles of the batteries. The disc 107 is designed to lie against the negative pole of the batteries. The caps have an internal, battery pole-contacting element 108 which is separated from the surrounding terminal-contacting element 109 by an insulator 110. In the embodiment illustrated in FIG. 11, the cap and disc are separated and positioned by a small strip 111 of insulating rigid material which facilitates the selection of the battery connections and their positioning into the battery compartment.

In the embodiment of. FIG. 12, pole-contacting areas and terminal-contacting areas are printed on a substrate 112 in a manner similar to the technique used on the flexible strip of the previously described embodiment of the invention. In this embodiment, the tips 112 and 113 are positioned for insertion in opposite sides of the compartment housing an odd number of rechargeable batteries.

In order to prevent use of the battery-recharging assembly according to this invention with non-rechargeable batteries, the positive pole-contacting area of a cap or tip may be provided with an insulated nib 115 which projects from the center of the pole-contacting area and thus prevent contact between the battery pole 116 and its contacting area 117 unless the positive pole of the battery has a cavity 118 positioned to engage the nib 115. Such a cavity would be provided exclusively on rechargeable batteries. In such a case, the specially configured batteries and the recharging assembly would be provided as a complete replacement kit for the rechargeable batteries.

FIG. 16 illustrates the problematic bending of a flexible prong 119 mounted on the side of a power supply pack 120 during insertion into the battery compartment 121 of an electronic device when the prong is caught by the edge 122 of the compartment.

The problem is corrected by the improvement illustrated in FIGS. 17 and 18 where the distal unattached end 123 of an improved prong 124 is shielded by a baffle 125. The baffle is mounted next to the prong in a vertical plane parallel to it. The prong is formed to provide a oblique linear section 126 between the arcuate contact section 127 and the distal tip 123. This linear section of the prong forms a smooth sliding ramp for any contact between the edge 122 of the compartment and the prong. The root 128 of the prong is preferably spaced slightly apart from all the vertical lateral wall 129 of the power supply pack in order to increase the clearance for the inward flexible movement of the prong upon contact with the edge 22 of the compartment.

FIG. 18 illustrates the preferred embodiment of the prong assembly suitable for use on the power pack illustrated in FIG. 2; wherein a pair of baffles 129, 130 are used astride the prong 124.

In the alternate embodiment of the prong assembly illustrated in FIG. 19, the distal end 131 of the prong 132 nests into a cavity 133 along the lower edge of the housing side wall 143.

While the preferred embodiments of the invention have been described, modifications can be made and other embodiments may be devised without departing from the spirit of the invention and the scope of the appended claims.

What is claimed is:

1. In combination with an electrical device having a compartment shaped and dimensioned to hold a plurality of batteries, said compartment having an opening

EXHIBIT 3     37     EXHIBIT 6
342

5,426,358

7

sized to allow loading and unloading said batteries, terminals protruding from lateral sections of said compartment and wired to carry electrical currents from said batteries to electrical circuits in said device, a first one of said terminals including a resiliently compressible first contact member positioned to forcefully contact a pole of one of said batteries, and a second one of said terminals including a second contact member positioned to contact an opposite pole of said one of said batteries, and a removable cover shaped and dimensioned to close said opening, a rechargeable power supply which comprises:

a housing shaped and dimensioned to be at least partially introduced into said compartment through said opening and having a top including a peripheral-section shaped and dimensioned to close said opening in lieu of said removable cover;

at least one rechargeable power cell mounted within said housing and having positive and negative poles;

a current conducting means wired for feeding a charging current to said at least one power cell, said current conducting means being mounted on said top to be accessible when said housing is within said compartment; and

means for connecting said at least one cell to said terminals, including at least one prong positioned on said housing to come in contact with one of said terminals.

2. The combination of claim 1, wherein said current conducting means comprises:

a two-pole connector mounted into said top piece, said connector being wired to said prongs.

8

3. The combination of claim 2, wherein said means for connecting further comprise:

a resistor and a diode, said diode having an anode terminal and a cathode terminal, said resistor and diode being wired in parallel between one of said terminals and the positive pole of said at least one power cell, the anode terminal of the diode being wired to said positive pole.

4. The combination of claim 3, wherein said compartment comprises a plurality of parallel bottom ribs spaced to position and cradle said at least one power cell;

said housing includes a bottom piece and a peripheral wall; and

said bottom piece has slots positioned and dimensioned to engage said ribs.

5. The combination of claim 4, wherein said peripheral border has a pair of holes providing access to said means for connecting.

6. The combination of claim 4, wherein an outer portion of the peripheral wall is slanted inwardly and away from one of said contact members.

7. The combination of claim 1, which comprises means for preventing damage to said prong including at least one rigid baffle commensurate with and extending along said prong.

8. In a power supply package shaped and dimensioned to be inserted into an electronic device, said package having flexible prongs positioned on one side of said package for interconnection with an electrical terminal in said electronic device, an improvement for preventing damage to said prong which comprises at least on rigid baffle extending alongside said prong.

9. The improvement of claim 8 comprising a pair of said baffles placed astride said prong.

* * * * *

40

45

50

55

60

65

EXHIBIT 3  38

EXHIBIT 6

343



US005506488A

# United States Patent [19]

## Leiserson

| [11] | Patent Number: | 5,506,488 |
|---|---|---|
| [45] | Date of Patent: | *Apr. 9, 1996 |

[54] **RECHARGEABLE POWER PACK FOR USE IN DEVICES POWERED BY MULTIPLE BATTERIES**

[76] Inventor: **Steven G. Leiserson**, Ste. C 10845 Wheatlands Ave., Santee, Calif. 92071

[ * ] Notice: The term of this patent shall not extend beyond the expiration date of Pat. No. 5,260,636.

[21] Appl. No.: 464,314

[22] Filed: **Jun. 5, 1995**

### Related U.S. Application Data

[63] Continuation of Ser. No. 111,929, Aug. 23, 1993, Pat. No. 5,426,358, which is a continuation of Ser. No. 27,181, Mar. 5, 1993, Pat. No. 5,260,636, which is a continuation-in-part of Ser. No. 887,479, May 22, 1992, Pat. No. 5,192,904, which is a continuation-in-part of Ser. No. 793,122, Nov. 18, 1991, Pat. No. 5,225,760.

[51] Int. Cl.⁶ ................................................ H01M 10/46

[52] U.S. Cl. ........................ 320/2; 429/98; 429/100

[58] Field of Search ........................... 320/2, 5; 429/96, 429/97, 98, 99, 100; D13/103, 107, 108

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| 4,123,598 | 10/1978 | Hammel | 429/159 |
|---|---|---|---|
| 4,161,568 | 7/1979 | Lund | 429/99 |
| 4,205,121 | 5/1980 | Naitoh | 429/99 |
| 4,321,523 | 3/1982 | Hammel | 320/14 |
| 4,532,194 | 7/1985 | Liautaud et al. | 429/99 |
| 4,558,270 | 12/1985 | Liautaud et al. | 320/2 |
| 4,590,943 | 5/1986 | Paull et al. | 128/419 |
| 5,019,767 | 5/1991 | Shirai et al. | 320/2 |
| 5,061,579 | 10/1991 | Ishimoto | 429/96 |
| 5,136,229 | 8/1992 | Galvin | 320/2 |
| 5,172,043 | 12/1992 | Toops | 320/2 |
| 5,192,904 | 3/1993 | Leiserson | 320/2 |
| 5,225,760 | 7/1993 | Leiserson | 320/2 |
| 5,260,636 | 11/1993 | Leiserson et al. | 320/2 |
| 5,426,358 | 6/1995 | Leiserson et al. | 320/2 |

#### FOREIGN PATENT DOCUMENTS

| 54-11119 | 5/1979 | Japan |
|---|---|---|
| 57-7178 | 2/1982 | Japan |
| 63-33571 | 3/1988 | Japan |

*Primary Examiner*—Peter S. Wong
*Assistant Examiner*—Edward Tso
*Attorney, Agent, or Firm*—Henri J. A. Charmasson; John D. Buchaca

[57] **ABSTRACT**

A rechargeable power pack is shaped and dimensioned to be inserted in the battery compartment of an electrical device. The top of the power pack is exactly symmetrical with the battery compartment cover which it replaces. The power pack houses rechargeable power cells, and has a peripheral wall spaced apart from the sides of the battery compartment mounting the battery contact terminal. Flexible prongs project from the peripheral walls to provide a wiping contact with either a spiral spring negative terminal or a stationary positive terminal of the compartment. A top mounted connector allows recharging of the power pack even while in use on the electrical device. Baffles mounted astride each flexible prong avert damage to the prong during insertion of the power pack into the battery compartment.

**14 Claims, 4 Drawing Sheets**



EXHIBIT 4 39
**EXHIBIT 6**
**344**



PRIOR ART

FIG. 1

FIG. 2

FIG. 3

FIG. 4

FIG. 5

FIG. 6

EXHIBIT 4    40

EXHIBIT 6

345



EXHIBIT 4   41

EXHIBIT 6

346



PRIOR ART

FIG. 16

FIG. 17

FIG. 18

FIG. 19

EXHIBIT 4    42
EXHIBIT 6
347

5,506,488

| 1 | 2 |

RECHARGEABLE POWER PACK FOR USE
IN DEVICES POWERED BY MULTIPLE
BATTERIES

PRIOR APPLICATION

This application is a continuation of Ser. No. 08/111,929 filed Aug. 23, 1993 to be issued as U.S. Pat. No. 5,426,358 on Jun. 20, 1995, a continuation of Ser. No. 08/027,181 filed Mar. 5, 1993, now U.S. Pat. No. 5,260,636 dated Nov. 9, 1993, a continuation-in-part of application Ser. No. 07/887,479 filed May. 22, 1992, now U.S. Pat. No. 5,192,904 dated Mar. 9, 1993, a continuation-in-part of Ser. No. 07/793,122 filed Nov. 18, 1991, now U.S. Pat. No. 5,225,760 dated Jul. 6, 1993.

FIELD OF THE INVENTION

This invention relates to rechargeable power packs for portable electrical devices.

BACKGROUND OF THE INVENTION

Many portable, battery-powered electronic devices such as radios, pagers, cassette recorders and the like have a covered battery compartment that is sized to accommodate several batteries and to interconnect them in a parallel or a serial configuration. The sides of the compartment have spiral spring terminals designed to forcedly contact the negative, bottom poles of the batteries, and stationary plates to contact their positive top located poles. Batteries, whether rechargeable or not, must be inserted one by one between pairs of such terminals. Other electronic instruments with a higher power draw such as video recorders accept a power pack housing a plurality of rechargeable power cells. A recharged power pack may be conveniently substituted for a run-down one in a few seconds.

It would be advantageous to replace the set of batteries of the first-described type of instrument by a rechargeable power pack which would fit in the battery compartment. However, the presence of the various spiral spring terminals and the battery-separating ribs that usually line the bottom of the battery compartment interfere with the insertion of such power packs.

Oftentimes, the length or width of the access to the battery compartment is shorter than the length of the batteries. The latter can only be installed by pressing each battery against one of the spiral terminals in order to clear the opposite edge of the opening. Accordingly, in-line battery packages such as those disclosed in U.S. Pat. No. 4,123,598 Hammel, whose outer-dimensions are necessarily similar to those of a set of installed batteries the package could replace, could not be inserted through such a restricted access; and particularly when spiral spring terminals are mounted on opposite sides of the battery compartment. Thus, until the instant invention, battery-powered devices have been equipped with compartments designed to accept either individually loaded batteries exclusively or with compartments designed to exclusively accept multi-cell power packages as disclosed in U.S. Pat. No. 5,061,579 Ishimoto. No rechargeable multi-cell power package has been provided that could fit within the battery compartment of a device not specifically built to accept it.

It would be even more advantageous to replace either the non-rechargeable batteries or the rechargeable power pack of an electronic device with a device, comprising recharge- able cells and a circuit allowing recharging during or after operation of the device. Preferably the device should be

packaged into a housing shaped and dimensioned to nest into the device battery compartment in lieu of the batteries or power pack, and need not to be removed from the compartment during the recharging operation.

One of the problems encountered in making substitution of non-rechargeable power cells with a like number of rechargeable ones is the lesser rating voltage of the latter which may result in unacceptable power supply voltage levels.

Flexible contact members used in power supply packages can be damaged during insertion into an electronic device if they are caught by the surrounding structure. There is a need for more reliable contact assemblies.

SUMMARY OF THE INVENTION

The principal and secondary object of the invention are to provide a replacement for a set of batteries normally required to energize a portable electrical device by a single, rechargeable power pack or set of rechargeable batteries that fit within the battery compartment and provide reliable contact with positive and negative terminals originally designed for contact with the various batteries positive and negative poles.

This and other valuable objects are achieved in a first approach, by means of a power pack shaped and dimensioned to be inserted in the battery compartment of an electrical device. The top of the power pack is exactly symmetrical with the battery compartment cover which it replaces. The power pack has a pair of flexible terminal prongs that are specially designed to provide a good contact with either the spiral spring-type negative terminal or the positive stationary terminal found in many devices between which cylindrical batteries are normally inserted. In a second approach, rechargeable substitute batteries are provided with a substitute battery compartment cover that include an additional battery station and an in-line recharging circuitry. Lateral baffles protecting the contact members of a power supply package during insertion into an electronic device are disclosed.

BRIEF DESCRIPTION OF THE DRAWING

FIG. 1 is a perspective view of a battery compartment of the prior art;

FIG. 2 is a perspective view of a rechargeable power pack according to the invention;

FIG. 3 is a detail view illustrating contact with a spiral-spring, negative battery terminal;

FIG. 4 is a detail view illustrating contact with a station-ary, positive battery terminal;

FIG. 5 is an electrical diagram of the power pack; FIG. 6 is a perspective view of an alternate embodiment of the invention; FIG. 7 is a perspective view of a rechargeable battery kit; FIG. 8 is a bottom plan view of the battery compartment cover assembly; FIG. 9 is a perspective view of a first alternate conductor assembly; FIG. 10 is a cross-sectional view of a customized contact assembly; FIG. 11 is a perspective view of a second alternate conductor assembly; FIG. 12 is a perspective view of a third alternate conductor assembly; FIG. 13 is a perspective view of a modified flexible strip; FIG. 14 is a schematic of a first embodiment of the battery kit; FIG. 15 is a schematic of a second embodiment thereof; FIG. 16 is a detail side view of the prior art contact assembly; FIG. 17 is a detail view of an improved contact assembly; FIG. 18 is a perspective view of

EXHIBIT 4   43   EXHIBIT 6

348

5,506,488

| 3 | 4 |

the preferred embodiment of the contact assembly; and FIG. 19 is a perspective view of an alternate embodiment of the contact assembly.

## DESCRIPTION OF THE PREFERRED EMBODIMENT OF THE INVENTION

Referring now to the drawing, there is illustrated in FIG. 1 the battery-holding compartment 1 of an electrical device such as a portable radio, cassette recorder, video game unit or the like. The compartment, shown made of transparent material for the sake of clarity, is designed to hold four AA-sized batteries wired in series. Only the first battery 2 is illustrated in phantom lines. A removable cover 3 closes the access 4 to the battery compartment, and is secured by a flange 5 along a section of the lower back edge 6 of the cover and a detent clip 7 mounted along the front edge 8. The flange 5 bears against the underside of a ledge 9 formed in the rear rim section of the compartment 1. The detent strip 7 passes through a notch 10 in a front ledge section 11 of the compartment, then under that ledge. Each battery is inserted between two terminals 12, 13, 14, 56, 16, 17, and 18, 19. The positive poles at the top of the batteries are placed against stationary positive terminals 12, 14, 16, and 18. The negative pole forming the battery are pressed against spiral springs 13, 15, 17, and 19 forming the negative terminals. Straps 20, 21 and 22 between terminals 13 and 14, 15, and 16, and 17 and 18 combine the batteries into a series arrangement. The positive terminal 12 and the negative terminal 19 pass through the front wall 23 of the compartment and are connected by appropriate wiring 24, 25 to the electrical device circuits. The batteries are separated and cradled by parallel ribs 26–30 formed into the bottom of the compartment.

FIG. 2 illustrates a rechargeable power pack 31, according to the invention, that may be substituted for the four batteries and cover 3 into the compartment 1 of FIG. 1. The power pack has a top 32 the periphery of which is exactly symmetrical to the periphery of cover 3. It also includes a rear flange 33 and a front detent clip 34 to secure the power pack 31 into the compartment 1. A tray 35 containing a group of rechargeable power cells is welded to the bottom of the cover 32. The tray comprises a peripheral wall 36 and a bottom piece 37. The front section 38 and back section 39 of the peripheral walls are spaced apart from the inner front and back walls of the compartment 1 in order to provide clearance for the spiral-spring terminals 13, 15, 17, and 19. Slots 40–44 in the bottom piece 37 are shaped and positioned to engage the ribs 26–30 in the bottom of the compartment 1 so that the tray 35 occupies the entire depth of the compartment. The median and lower portion of the front section 38 of the peripheral wall is slanted downwardly and inwardly in order to provide additional clearance for the spiral-spring terminals.

Connection between the power pack 31 and the positive and negative terminals 12 and 19 of the compartment are provided by a pair of resiliently flexible prongs 45 and 46 that extend in front of the front section 38 of the peripheral wall. The prongs 45, 46 are identical and are configured to provide a good wiping contact with either the stationary-type terminal 12 or the compressible spiral-spring terminal 19 as illustrated in FIGS. 3 and 4. Each prong is formed from a small strip of copper that begins inside the tray where it is connected to the network of power cells. A hairpin-shaped portion 49 of the strip passes over the top rim of the front wall 38 through one of a pair of slots 47, 48 in the flat top 32. After running shortly downward along the upper outer

surface of the front wall 38 it bows away from the front wall section 38 to form a semi-circular arcuate portion 50. When the power pack 31 is inserted into the compartment 1, the negative prong 46 slips between spiral coils of the negative spring terminal 19, providing a good contact with a terminal after a wiping movement which clears the contacting areas of any oxide or other deposit. The arcuate portion 50 of the other prong 45 comes in contact with the positive stationary terminal 12, and is deflected slightly until its apex 51 bears firmly against the positive terminal 12. The movement of the prong against the terminal also provides a good wiping movement of the contacting surfaces.

The pair of slots 47, 48 in the flat top provide access to the electrical output of the power pack for use in powering accessories or in wiring auxiliary external power packs in parallel with the one placed in the battery compartment. A recharging connector 52 is also mounted on the flat top.

The set of four rechargeable power cells 53–56 inside the tray 35 are wired in series as illustrated in FIG. 5. A diode 57 and resistor 58 wired in parallel connect the positive output of the series of power cells to the positive terminals of the charging connector 52 and the positive prong terminal 45. Since the anode 59 of the diode 57 is connected to the positive output of the power cells any charging current must pass through the current limiting resistor 58. Any current drawn from the power cells flows directly through the diode 57.

In the case where the original batteries are not laid side-by-side on one end in a battery compartment of an electrical device, the power pack according to the invention must have the general configuration 60 illustrated in FIG. 6. The two contacting prongs 61, 62 are located at opposite ends of the power pack.

One of those prongs 61 has a distal end 63 that curves inwardly to penetrate a lower section of the side wall 64 where it remains embedded for better stability. Due to the inwardly and downwardly orientation of the side wall 64, this type of prong provides effective contact with either types of terminals.

The universal configuration of the power pack terminal prongs, not only will be compatible with the spiral-spring type or stationary type terminals illustrated in this example, but also with a variety of resilient and non-resilient, slotted or integral terminals which may be found in a variety of battery compartments.

FIGS. 7–15 illustrate an alternate approach to the power pack consisting essentially in the replacement of the non-rechargeable batteries in the battery compartment 65 of an electrical device 66 by a set 67 of similarly sized rechargeable batteries, and replacement of the original battery compartment cover by an assembly 68 specially configured to allow recharging of the battery set 67 either during or after operation of the device 66.

The assembly 68 comprises a substantially planar support 69 that is shaped and dimensioned to mimic the original battery compartment cover of the device and effectively close the opening 70 of that compartment in place of the original cover. As more specifically illustrated in FIGS. 7 and 8, the planar support is connected to the battery compartment and the batteries by a detachable flexible strip 71 which at a first end 72 is permanently attached to the underside of the planar support 69, and includes at its distal end 73 two tips 74, 75 that are shaped and dimensioned to be inserted between the poles of two batteries and their corresponding terminals in the walls of the compartment 65.

In order to compensate for the lower voltage rating, typically 1.2 volt, of NiCad batteries compared to the

EXHIBIT 4    44
EXHIBIT 6
349

5,506,488

| 5 | 6 |

voltage rating, typically 1.5 volt, of an alkaline battery, an additional battery station 76 is provided in the upper surface of the planar support 69. A socket 77 also mounted on the upper surface of the planar support is designed to receive a jack connector of a recharging current source. An electrical circuit 78 including a charging current limiting resistor 79 and a by-pass diode 80 interconnects the socket 77 and the additional battery station 76 to three connection points 81, 82 and 83 on the proximal end section 72 of the flexible strip 71.

In this embodiment, the flexible strip 72 is made from a laminated sheet of insulating material, as is commonly used in the fabrication of flexible cables, upon which three electrical conductors 84, 85, and 86 have been printed according to well-known techniques. A part 87 of the proximal end section of the flexible strip is also used to mount the electrical circuit 78 and to carry appropriate wiring conductors between the additional battery station terminals 88, 89, the socket 77, the resistor 79, and the diode 80. The flexible strip 72 is hinged along a first fold line 90 parallel and proximal to the front edge 91 of the planar support 69. The distal end is also folded along a second fold line 92 so that when the contacting tips 74 and 75 are inserted between the poles and corresponding terminals of the two end batteries 93, 94 of the set 67, the assembly assumes the Z-shaped configuration illustrated in FIG. 7. This particular arrangement allows for easy and convenient insertion of the contacting tips 74, 75 and closure and reopening of the battery compartment 65. As more specifically shown in the diagram of FIG. 14, the first tip 74 which contacts the positive pole of battery 93 and the positive terminal 95 of the compartment has a first pole-contacting area 97 that is connected to conductor 84 on one side of the tip 74, and a first terminal contacting area 98 connected to conductor 85 on the opposite face of the tip 74. The first pole-contacting area 97 and the first terminal-contacting area 98 are insulated by the thickness of the tip 74. By contrast, the second pole-contacting area 99 on one side of the second tip 75 and the second terminal-contacting area 100 on the opposite side of that tip are both connected to conductor 86 by means of a feedthrough 101, or via other appropriate technique.

In the event that the compartment 65 houses an odd number of batteries, the two tips must be positioned on opposite sides of the compartment. This is achieved by separating the distal halves 102, 103 of the flexible strip, and folding one half 103 along a third fold line 104 as illustrated in FIG. 13.

When a limited number of batteries are reused by the device, the additional battery station 76 of FIG. 1 may be omitted since the voltage difference between the recharge-able type and non-rechargeable type of batteries may be insignificant. FIG. 15 illustrates the wiring of such a simplified assembly where only three batteries are used, necessitating placement of the tips at opposite sides of the compartment. In the embodiment illustrated by the schematic of FIG. 14, the diode 80 is used to by-pass the current limiting resistor 79 when the current necessary to operate the device is drawn from the rechargeable batteries. The schematic of FIG. 15 illustrates an alternate arrangement wherein the socket 77 incorporates a switch 105 that acts in lieu of the diode 80 of the alternate embodiment to short-circuit the resistor 79 when the operating current is drawn directly from the battery set and not from the remote charging source. The switch 105 is opened when the recharge current source jack is inserted into the socket, thus placing the resistor 79 in the recharging current path to the batteries.

Illustrated in FIGS. 9, 11 and 12 are alternate embodiments of the flexible connection between the substitute battery compartment cover and the battery poles and terminals, using separate wires and cables instead of a printed flexible strip. In the embodiment of FIG. 9, the contacting tips 74, 75 of the previously described embodiments are replaced by a cap 106 and a disc 107. The cap 106 is shaped and dimensioned to fit over the positive poles of the batteries. The disc 107 is designed to lie against the negative pole of the batteries. The caps have an internal, battery pole-contacting element 108 which is separated from the surrounding terminal-contacting element 109 by an insulator 110. In the embodiment illustrated in FIG. 11, the cap and disc are separated and positioned by a small strip 111 of insulating rigid material which facilitates the selection of the battery connections and their positioning into the battery compartment.

In the embodiment of FIG. 12, pole-contacting areas and terminal-contacting areas are printed on a substrate 112 in a manner similar to the technique used on the flexible strip of the previously described embodiment of the invention. In this embodiment, the tips 112 and 113 are positioned for insertion in opposite sides of the compartment housing an odd number of rechargeable batteries.

In order to prevent use of the battery-recharging assembly according to this invention with non-rechargeable batteries, the positive pole-contacting area of a cap or tip may be provided with an insulated nib 115 which projects from the center of the pole-contacting area and thus prevent contact between the battery pole 116 and its contacting area 117 unless the positive pole of the battery has a cavity 118 positioned to engage the nib 115. Such a cavity would be provided exclusively on rechargeable batteries. In such a case, the specially configured batteries and the recharging assembly would be provided as a complete replacement kit for the rechargeable batteries.

FIG. 16 illustrates the problematic bending of a flexible prong 119 mounted on the side of a power supply pack 120 during insertion into the battery compartment 121 of an electronic device when the prong is caught by the edge 122 of the compartment.

The problem is corrected by the improvement illustrated in FIGS. 17 and 18 where the distal unattached end 123 of an improved prong 124 is shielded by a baffle 125. The baffle is mounted next to the prong in a vertical plane parallel to it. The prong is formed to provide a oblique linear section 126 between the arcuate contact section 127 and the distal tip 123. This linear section of the prong forms a smooth sliding ramp for any contact between the edge 122 of the compartment and the prong. The root 128 of the prong is preferably spaced slightly apart from all the vertical lateral wall 129 of the power supply pack in order to increase the clearance for the inward flexible movement of the prong upon contact with the edge 22 of the compartment.

FIG. 18 illustrates the preferred embodiment of the prong assembly suitable for use on the power pack illustrated in FIG. 2; wherein a pair of baffles 129, 130 are used astride the prong 124.

In the alternate embodiment of the prong assembly illustrated in FIG. 19, the distal end 131 of the prong 132 nests into a cavity 133 along the lower edge of the housing side wall 143.

While the preferred embodiments of the invention have been described, modifications can be made and other embodiments may be devised without departing from the spirit of the invention and the scope of the appended claims.

**EXHIBIT 6**
350

**EXHIBIT 4**
45

5,506,488

7

What is claimed is:

1. The combination of an electrical device including a compartment having a first length, a width and a depth dimensioned to hold an even number of batteries therein, said batteries being mounted side-by-side in alternating opposite directions, said compartment having a top opening sized to allow one-by-one loading and unloading said batteries into and out of said compartment, said opening having a second length shorter than said first length, and a ledge extending from a lateral wall of said compartment to said opening, terminals protruding from said lateral wall and wired to carry electrical current from said batteries to electrical circuits in said device, a first one of said terminals including a resiliently compressible first contact member extending under said opening and being positioned to forcefully contact a pole of one of said batteries, and a second one of said terminals including a second contact member positioned under said ledge to contact an opposite pole of one of said batteries, and a removable cover shaped and dimensioned to close said opening co-planarly with said ledge, with a rechargeable power supply which comprise:

a housing having a portion shaped and dimensioned to be at least partially introduced into said compartment through said opening;

at least one rechargeable power cell mounted within said housing and having positive and negative poles;

a current conducting means wired for feeding a charging current to said at least one power cell, said current conducting means including a connector mounted on said housing; and

means for connecting said at least one cell to said terminals, including a first resiliently compressible prong protruding laterally from said housing and being sized, and positioned on a side wall of said portion to extend under said ledge and come in contact with the second contact member of said second terminal and a second prong positioned on said side wall to come into contact with said first contact member when said portion of said housing is inserted into said compartment.

2. The combination of claim 1, wherein said connector comprises:

a two-pole jack wired to said first and second prongs.

3. The combination of claim 2, wherein said means for connecting further comprise:

A resistor and a diode, said diode having an anode terminal and a cathode terminal, said resistor and diode being wired in parallel between one of said terminals and the positive pole of said at least one power cell, the anode terminal of the diode being wired to said positive pole.

4. The combination of claim 2, wherein said connector is positioned on a section of said housing accessible when said portion is inserted into said compartment.

5. The combination of claim 3, wherein said compartment comprises a plurality of parallel bottom ribs spaced to position and cradle said batteries;

said housing includes a bottom piece; and

said bottom piece has slots positioned and dimensioned to engage said ribs.

6. The combination of claim 2, wherein said housing has a top including a peripheral section said connector being mounted on said top; and

said means for feeding a charging current comprises a current-limiting circuit between said connector and said at least one power cell.

8

7. The combination of claim 3, wherein said housing includes a peripheral wall slanted inwardly and away from one of said contact members.

8. A rechargeable power supply for use in combination with an electrical device that includes a compartment having a first length, a width and a depth dimensioned to hold an even number of batteries therein, said batteries being mounted side-by-side in alternating opposite directions, said compartment having a top opening sized to allow one-by-one loading and unloading said batteries into and out of said compartment, said opening having a second length shorter than said first length, and a ledge extending from a lateral wall of said compartment to said opening, terminals protruding from said lateral wall and wired to carry electrical current from said batteries to electrical circuits in said device, a first one of said terminals including a resiliently compressible first contact member extending under said opening and being positioned forcefully contact a pole of one of said batteries, and a second one of said terminals including a second contact member positioned under said ledge to contact an opposite pole of one of said batteries, and a removable cover shaped and dimensioned to close said opening co-planarly with said ledge, said rechargeable power supply comprising:

a housing having a portion shaped and dimensioned to be at least partially introduced into said compartment through said opening;

at least one rechargeable power cell mounted within said housing and having positive and negative poles;

a current conducting means wired for feeding a charging current to said at least one power cell, said current conducting means including a connector mounted on said housing; and

means for connecting said at least one cell to said terminals, including a first resiliently compressible prong protruding laterally from said housing and being sized, and positioned on a side wall of said portion to extend under said ledge and come in contact with the second contact member of said second terminal and a second prong positioned on said side wall to come into contact with said first contact member when said portion of said housing is inserted into said compartment.

9. The power supply of claim 8, wherein said connector comprises:

a two-pole jack wired to said first and second prongs.

10. The power supply of claim 9, wherein said means for connecting further comprise:

A resistor and a diode, said diode having an anode terminal and a cathode terminal, said resistor and diode being wired in parallel between one of said terminals and the positive pole of said at least one power cell, the anode terminal of the diode being wired to said positive pole.

11. The power supply of claim 9, wherein said connector is positioned on a section of said housing accessible when said portion is inserted into said compartment.

12. The power supply of claim 8, wherein said compartment comprises a plurality of parallel bottom ribs spaced to position and cradle said batteries;

said housing includes a bottom piece; and

said bottom piece has slots positioned and dimensioned to engage said ribs.

EXHIBIT 4   46

EXHIBIT 6
351

5,506,488

9

13. The power supply of claim 9, wherein said housing has a top including a peripheral section dimensioned to close said opening in lieu of said removable said connector being mounted on said top; and

said means for feeding a charging current comprises a

10

current-limiting circuit between said connector and said at least one power cell.

14. The power supply of claim 9, wherein said housing includes a peripheral wall slanted inwardly and away from one of said contact members.

* * * * *

EXHIBIT 6
352

EXHIBIT 4   '47



US005608303A

# United States Patent [19]

## Leiserson

[11]    Patent Number:    5,608,303

[45]    Date of Patent:    *Mar. 4, 1997

[54]    VIDEO GAME POWER PACK

[76]    Inventor:    Steven G. Leiserson, 10845
Wheatlands Ave., Santee, Calif. 92071

[ * ]    Notice:    The term of this patent shall not extend
beyond the expiration date of Pat. No.
5,506,488.

[21]    Appl. No.: 627,621

[22]    Filed:    Apr. 4, 1996

### Related U.S. Application Data

[63]    Continuation of Ser. No. 464,314, Jun. 5, 1995, Pat. No.
5,506,488, which is a continuation of Ser. No. 111,929, Aug.
23, 1993, Pat. No. 5,426,358, which is a continuation of Ser.
No. 27,181, Mar. 5, 1993, which is a continuation of Ser. No.
260,636, Nov. 9, 1993, which is a continuation-in-part of
Ser. No. 887,479, May 22, 1992, Pat. No. 5,192,904, which
is a continuation-in-part of Ser. No. 793,122, Nov. 18, 1991,
Pat. No. 5,225,760.

[51]    Int. Cl.$^6$ ......................................... H01M 10/46

[52]    U.S. Cl. ........................... 320/2; 429/98; 429/100

[58]    Field of Search ........................... 320/2, 15; D13/103,
D13/107, 108; 429/96–100; 307/150

[56]    References Cited

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,123,598 | 10/1978 | Hammel | |
| 4,161,568 | 7/1979 | Lund | 429/99 |
| 4,205,121 | 5/1980 | Naitoh | 429/99 |
| 4,321,523 | 3/1982 | Hammel | |
| 4,532,194 | 7/1985 | Liautaud et al. | 429/99 |
| 4,558,270 | 12/1985 | Liautaud et al. | 320/99 |
| 5,136,229 | 8/1992 | Galvin | 320/2 |
| 5,172,043 | 12/1992 | Toops | 320/2 |
| 5,192,904 | 3/1993 | Leiserson | 320/2 |
| 5,225,760 | 7/1993 | Leiserson | 320/2 |
| 5,260,636 | 11/1993 | Leiserson et al. | 320/2 |
| 5,506,488 | 4/1996 | Leiserson | 320/2 |

Primary Examiner—Edward H. Tso
Attorney, Agent, or Firm—Henri J. A. Charmasson; John D.
Buchaca

[57]    ABSTRACT

A rechargeable power pack is shaped and dimensioned to be
inserted in the battery compartment of an electrical device.
The top of the power pack is exactly symmetrical with the
battery compartment cover which it replaces. The power
pack houses rechargeable power cells, and has a peripheral
wall spaced apart from the sides of the battery compartment
mounting the battery contact terminal. Flexible prongs
project from the peripheral walls to provide a wiping contact
with either a spiral spring negative terminal or a stationary
positive terminal of the compartment. A top mounted con-
nector allows recharging of the power pack even while in
use on the electrical device. Baffles mounted astride each
flexible prong avert damage to the prong during insertion of
the power pack into the battery compartment.

14 Claims, 4 Drawing Sheets



EXHIBIT 5    48

EXHIBIT 6
353



PRIOR ART

FIG. 1

FIG. 3

FIG. 2

FIG. 4

FIG. 5

FIG. 6

EXHIBIT 5    49

EXHIBIT 6

354



U.S. Patent

Mar. 4, 1997

Sheet 2 of 4

5,608,303

*FIG 7*

*FIG 8*

EXHIBIT 5 50

EXHIBIT 6

355

U.S. Patent       Mar. 4, 1997       Sheet 3 of 4       5,608,303



FIG 9

FIG 10

FIG 11

FIG 12

FIG 13

FIG 14

FIG 15

EXHIBIT 5   51
EXHIBIT 6
356



PRIOR ART

FIG. 16

FIG. 17

FIG. 18

FIG. 19

EXHIBIT 5   52

**EXHIBIT 6**

**357**

5,608,303

1

# VIDEO GAME POWER PACK

## PRIOR APPLICATION

This application is a continuation of U.S. application Ser. No. 08/464,314 filed Jun. 5, 1995, now U.S. Pat. No. 5,506,488, a continuation of U.S. application Ser. No. 08/111,929 filed Aug. 23, 1993 to be issued as U.S. Pat. No. 5,426,358 on Jun. 20, 1995, a continuation of U.S. application Ser. No. 08/027,181 filed Mar. 5, 1993, now U.S. Pat. No. 5,260,636 dated Nov. 9, 1993, a continuation-in-part of U.S. application Ser. No. 07/887,479 filed May 22, 1992, now U.S. Pat. No. 5,192,904 dated Mar. 9, 1993, a continuation-in-part of U.S. application Ser. No. 07/793,122 filed Nov. 18, 1991, now U.S. Pat. No. 5,225,760 dated Jul. 6, 1993.

## FIELD OF THE INVENTION

This invention relates to rechargeable power packs for portable electrical devices.

## BACKGROUND OF THE INVENTION

Many portable, battery-powered electronic devices such as radios, pagers, cassette recorders and the like have a covered battery compartment that is sized to accommodate several batteries and to interconnect them in a parallel or a serial configuration. The sides of the compartment have spiral spring terminals, designed to forcedly contact the negative, bottom poles of the batteries, and stationary plates to contact their positive top located poles. Batteries, whether rechargeable or not, must be inserted one by one between pairs of such terminals. Other electronic instruments with a higher power draw such as video recorders accept a power pack housing, a plurality of rechargeable power cells. A recharged power pack may be conveniently substituted for a run-down one in a few seconds.

It would be advantageous to replace the set of batteries of the first-described type of instrument by a rechargeable power pack which would fit in the battery compartment. However, the presence of the various spiral spring terminals and the battery-separating ribs that usually line the bottom of the battery compartment interfere with the insertion of such power packs.

Oftentimes, the length or width of the access to the battery compartment is shorter than the length of the batteries. The latter can only be installed by pressing each battery against one of the spiral terminals in order to clear the opposite edge of the opening. Accordingly, in-line battery packages such as those disclosed in U.S. Pat. No. 4,123,598 Hammel, whose outer-dimensions are necessarily similar to those of a set of installed batteries the package could replace, could not be inserted through such a restricted access; and particularly when spiral spring terminals are mounted on opposite sides of the battery compartment. Thus, until the instant invention, battery-powered devices have been equipped with compartments designed to accept either individually loaded batteries exclusively or with compartments designed to exclusively accept multi-cell power packages is disclosed in U.S. Pat. No. 5,061,579 Ishimoto. No rechargeable multi-cell power package has been provided that could fit within the battery compartment of a device not specifically built to accept it.

It would be even more advantageous to replace either the non-rechargeable batteries or the rechargeable power pack set of an electronic device with a device, comprising rechargeable cells and a circuit allowing recharging during or after

2

operation of the device. Preferably the device should be packaged into a housing shaped and dimensioned to nest into the device battery compartment in lieu of the batteries or power pack, and need not to be removed from the compartment during the recharging operation,

One of the problems encountered in making substitution of non-rechargeable power cells with a like number of rechargeable ones is the lesser rating voltage of the latter which may result in unacceptable power supply voltage levels.

Flexible contact members used in power supply packages can be damaged during insertion into an electronic device if they are caught by the surrounding structure. There is a need for more reliable contact assemblies.

## SUMMARY OF THE INVENTION

The principal and secondary object of the invention are to provide a replacement for a set of batteries normally required to energize a portable electrical device by a single, rechargeable power pack or set of rechargeable batteries that fit within the battery compartment and provide reliable contact with positive and negative terminals originally designed for contact with the various batteries positive and negative poles.

This and other valuable objects are achieved in a first approach, by means of a power pack shaped and dimensioned to be inserted in the battery compartment of an electrical device. The top of the power pack is exactly symmetrical with the battery compartment cover which it replaces. The power pack has a pair of flexible terminal prongs that are specially designed to provide a good contact with either the spiral spring-type negative terminal or the positive stationary terminal found-in many devices between which cylindrical batteries are normally inserted. In a second approach, rechargeable substitute batteries are provided with a substitute battery compartment cover that include an additional battery station and an in-line recharging circuitry. Lateral baffles protecting the contact members of a power supply package during insertion into an electronic device are disclosed.

## BRIEF DESCRIPTION OF THE DRAWING

FIG. 1 is a perspective view of a battery compartment of the prior art;

FIG. 2 is a perspective view of a rechargeable power pack according to the invention;

FIG. 3 is a detail view illustrating contact with a spiral-spring, negative battery terminal;

FIG. 4 is a detail view illustrating contact with a stationary, positive battery terminal;

FIG. 5 is an electrical diagram of the power pack;

FIG. 6 is a perspective view of an alternate embodiment of the invention;

FIG. 7 is a perspective view of a rechargeable battery kit;

FIG. 8 is a bottom plan view of the battery compartment cover assembly;

FIG. 9 is a perspective view of a first alternate conductor assembly;

FIG. 10 is a cross-sectional view of a customized contact assembly;

FIG. 11 is a perspective view of a second alternate conductor assembly;

EXHIBIT 5

53

EXHIBIT 6

358

5,608,303

| 3 | 4 |

FIG. 12 is a perspective view of a third alternate conductor assembly;

FIG. 13 is a perspective View of a modified flexible strip.

FIG. 14 is a schematic of a first embodiment of the battery kit;

FIG. 15 is a schematic Of a second embodiment thereof;

FIG. 16 is a detail side view of the prior art contact assembly;

FIG. 17 is a detail view of an improved contact assembly;

FIG. 18 is a perspective view of the preferred embodiment of the contact assembly; and

FIG. 19 is a perspective view of an alternate embodiment of the contact assembly.

DESCRIPTION OF THE PREFERRED
EMBODIMENT OF THE INVENTION

Referring now to the drawing, there is illustrated in FIG. 1 the battery-holding compartment 1 of an electrical device such as a portable radio, cassette recorder, video game unit or the like. The compartment, shown made of transparent material for the sake of clarity, is designed to hold four AA-sized batteries wired in series. Only the first battery 2 is illustrated in phantom lines.. A removable cover 3 closes the access 4 to the battery compartment, and is secured by a flange 5 along a section of the lower back edge 6 of the cover and a detent clip 7 mounted along the front edge 8. The flange 5 bears against the underside of a ledge 9 formed in the rear rim section of the compartment 1. The detent strip 7 passes through a notch 10 in a front ledge section 11 of the compartment, then under that ledge. Each battery is inserted between two terminals 12, 13, 14, 56, 16, 17, and 18, 19. The positive poles at the top of the batteries are placed against stationary positive terminals 12, 14, 16, and 18. The negative pole forming the bottom of the batteries are pressed against spiral springs 13, 15, 17, and 19 forming the negative terminal. Straps 20, 21 and 22 between terminals 13 and 14, 15, and 16, and 17 and 18 combine the batteries into a series arrangement. The positive terminal 12 and the negative terminal 19 pass through the front wall 23 of the compartment and are connected by appropriate wiring 24, 25 to the electrical device circuits. The batteries are separated and cradled by parallel ribs 26–30 formed into the bottom of the compartment.

FIG. 2 illustrates a rechargeable power pack 31, according to the invention, that may be substituted for the four batteries and cover 3 into the compartment of FIG. 1. The power pack has a top 32 the periphery of which is exactly symmetrical to the periphery of cover 3. It also includes a rear flange 33 and a front detent clip 34 to secure the power pack 31 into the compartment 1. A tray 35 containing a group of rechargeable power cells is welded to the bottom of the cover 32. The tray comprises a peripheral wall 36 and a bottom piece 37. The front section 38 and back section 39 of the peripheral walls are spaced apart from the inner front and back walls of the compartment 1 in order to provide clearance for the spiral-spring terminals 13, 15, 17, and 19. Slots 40–44 in the bottom piece 37 are shaped and, positioned to engage the ribs 26–30 in the bottom of the compartment 1 so that the tray 35 occupies the entire depth of the compartment. The median and lower portion of the front section 38 of the peripheral wall is slanted downwardly and inwardly in order to provide additional clearance for the spiral-spring terminals.

Connection between the power pack 31 and the positive and negative terminals 12 and 19 of the compartment are provided by a pair of resiliently flexible prongs 45 and 46 that extend in front of the front section 38 of the peripheral wall. The prongs 45, 46 are identical and are configured to provide a good wiping contact with either the stationary-type terminal 12 or the compressible spiral-spring terminal 19 as illustrated in FIGS. 3 and 4. Each prong is formed from a small strip of copper that begins inside the tray where it is connected to the network of power cells. A hairpin-shaped portion 49 of the strip passes over the top rim of the front wall 38 through one of a pair of slots 47, 48 in the flat top 32. After running shortly downward along the upper outer surface of the front wall 38 it bows away from the front wall section 38 to form a semi-circular arcuate portion 50. When the power pack 31 is inserted into the compartment 1, the negative prongs 46 slips between spiral coils of the negative spring terminal 19, providing a good contact with a terminal after a wiping movement which clears the contacting areas of any oxide or other deposit. The arcuate portion 50 of the other prong 45 comes in contact with the positive stationary terminal 12, and is deflected slightly until its apex 51 bears firmly against the positive terminal 12, The movement of the prongs against the terminal also provides a good wiping movement of the contacting surfaces.

The pair of slots 47, 48 in the flat top provide access to the electrical output of the power pack for use in powering accessories or in wiring auxiliary external power packs in parallel with the one placed in the battery compartment. A recharging connector 52 is also mounted on the flat top.

The set of four rechargeable power cells 53–56 inside the tray 35 are wired in series as illustrated in FIG. 5. A diode 57 and resistor 58 wired in parallel connect the positive output of the series of power cells to the positive terminals of the charging connector 52 and the positive prong terminal 45. Since the anode 59 of the diode 57 is connected to the positive output of the power cells any charging current must pass through the current limiting resistor 58. Any current drawn from the power bells flows directly through the diode 57.

In the case where the original batteries are not laid side-by-side but on end in a battery compartment of an electrical device, the power pack according to the invention must have the general configuration 60 illustrated in FIG. 6. The two contacting prongs 61, 62 are located at opposite ends of the power pack.

One of those prongs 61 has a distal end 63 that curves inwardly to penetrate a lower section of the side wall 64 where it remains embedded for better stability. Due to the inwardly and downwardly orientation of the side wall 64, this type of prong provides effective contact with either types of terminals.

The universal configuration of the power pack terminal prongs, not only will be compatible with the spiral-spring type or stationary type terminals illustrated in this example, but also with a variety of resilient and non-resilient, slotted or integral terminals which may be found in a variety of battery compartments.

FIGS. 7–15 illustrate an alternate approach to the power pack consisting essentially in the replacement of the non-rechargeable batteries in the battery compartment 65 of an electrical device 66 by a set 67 of similarly sized rechargeable batteries, and replacement of the original battery compartment cover by an assembly 68 specially configured to allow recharging of the battery set 67 either during or after operation of the device 66.

The assembly 68 comprises a substantially planar support 69 that is shaped and dimensioned to mimic the original

EXHIBIT 6
359

EXHIBIT 5   54

5,608,303

| 5 | 6 |

battery compartment cover of the device and effectively close the opening 70 of that compartment in place of the original cover. As more specifically illustrated in FIGS. 7 and 8, the planar support is connected to the battery compartment and the batteries by a detachable flexible strip 71 which at a first end 72 is permantly attached to the underside of the planar support 69, and includes at its distal end 73 two tips 74, 75 that are shaped and dimensioned to be inserted between the poles of two batteries and their corresponding terminals in the walls of the compartment 65.

In order to compensate for the lower voltage rating, typically 1.2 volt, of NiCad batteries compared to the voltage rating, typically 1.5 volt, of an alkaline battery, an additional battery station 76 is provided in the upper surface of the planar support 69. A socket 77 also mounted on the upper surface of the planar support is designed to receive a jack connector of a recharging current source. An electrical circuit 78 including a charging current limiting resistor 79 and a by-pass diode 80 interconnects the socket 77 and the additional battery station 76 to three connection points 81, 82 and 83 on the proximal end section 72 of the flexible strip 71.

In this embodiment, the flexible strip 72 is made from a laminated sheet of insulating material, as is commonly used in the fabrication of flexible cables, upon which three electrical conductors 84, 85, and 86 have been printed according to well-known techniques. A part 87 of the proximal end section of the flexible strip is also used to mount the electrical circuit 78 and to carry appropriate wiring conductors between the additional battery station terminals 88, 89, the socket 77, the resistor 79, and the diode 80. The flexible strip 72 is hinged along a first fold line 90 parallel and proximal to the front edge 91 of the planar support 69. The distal end is also folded along a second fold line 92 so that when the contacting tips 74 and 75 are inserted between the poles and corresponding terminals of the two end batteries 93, 94 of the set 67, the assembly assumes the Z-shape configuration illustrated in FIG. 7. This particular arrangement allows for easy and convenient insertion of the contacting tips 74, 75 and closure and reopening of the battery compartment 65. As more specifically shown in the diagram of FIG. 14, the first tip 74 which contacts the positive pole of battery 93 and the positive terminal 95 of the compartment has a first pole-contacting area 97 that is connected to conductor 84 on one side of the tip 74, and a first terminal contacting area 98 connected to conductor 85 on the opposite face of the tip 74. The first pole-contacting area 97 and the first terminal-contacting area 98 are insulated by the thickness of the tip 74. By contrast, the second pole-contacting area 99 on one side of the second tip 75 and the second terminal-contacting area 100 on the opposite side of that tip are both connected to conductor 86 by means of a feedthrough 101, or via other appropriate technique.

In the event that the compartment 65 houses an odd number of batteries, the two tips must be positioned on opposite sides of the compartment. This is achieved by separating the distal halves 102, 103 of the flexible strip, and folding one half 103 along a third fold line 104 as illustrated in FIG. 13.

When a limited number of batteries are reused by the device, the additional battery station 76 of FIG. 1 may be omitted since the voltage difference between the rechargeable type and non-rechargeable type of batteries may be insignificant. FIG. 15 illustrates the wiring of such a simplified assembly where only three batteries are used, necessitating placement of the tips at opposite sides of the battery compartment. In the embodiment illustrated by the sche-

matic of FIG. 14, the diode 80 is used to by-pass the current limiting resistor 79 when the current necessary to operate the device is drawn from the rechargeable batteries. The schematic of FIG. 15 illustrates an alternate arrangement wherein the socket 77 incorporates a switch 105 that acts in lieu of the diode 80 of the alternate embodiment to short-circuit the resistor 79 when the operating current is drawn directly from the battery set and not from the remote charging source. The switch 105 is opened when the recharge current source jack is inserted into the socket, thus placing the resistor 79 in the recharging current path to the batteries.

Illustrated in FIGS. 9, 11 and 12 are alternate embodiments of the flexible connection between the substitute battery compartment cover and the battery poles and terminals, using separate wires and cables instead of a printed flexible strip. In the embodiment of FIG. 9, the contacting tips 74, 75 of the previously described embodiments are replaced by a cap 106 and a disc 107. The cap 106 is shaped and dimensioned to fit over the positive poles of the batteries. The disc 107 is assigned to lie against the negative pole of the batteries. The caps have an internal, battery pole-contacting element 108 which is separated from the surrounding terminal-contacting element 109 by an insulator 110. In the embodiment illustrated in FIG. 11, the cap and disc are separated and positioned by a small strip 111 of insulating rigid material which facilitates the selection of the battery connections and their positioning into the battery compartment.

In the embodiment of FIG. 12, pole-contacting areas and terminal-contacting areas are printed on a subsurate 112 in a manner similar to the technique used on the flexible strip of the previously described embodiment of the invention. In this embodiment, the tips 112 and 113 are positioned for insertion in opposite sides of the compartment housing an odd number of rechargeable batteries.

In order to prevent use of the battery-recharging assembly according to this invention with non-rechargeable batteries, the positive pole-contacting area of a cap or tip may be provided with an insulated nib 115 which projects from the center of the pole-contacting area and thus prevent contact between the battery pole 116 and its contacting area 117 unless the positive pole of the battery has a cavity 118 positioned to engage the nib 115. Such a cavity would be provided exclusively on rechargeable batteries. In such a case, the specially configured batteries and the recharging assembly would be provided as a complete replacement kit for the rechargeable batteries.

FIG. 16 illustrates the problematic bending of a flexible prong 119 mounted on the side of a power supply pack 120 during insertion into the battery compartment 121 of an electronic device when the prong is caught by the edge 122 of the compartment.

The problem is corrected by the improvement illustrated in FIGS. 17 and 18 where the distal unattached end 123 of an improved prong 124 is shielded by a baffle 125. The baffle is mounted next to the prong in a vertical plane parallel to it. The prong is formed to provide a oblique linear section 126 between the arcuate contact section 127 and the distal tip 123. This linear section of the prong forms a smooth sliding ramp for any contact between the edge 122 of the compartment and the prong. The root 128 of the prong is preferably spaced slightly apart from all the vertical lateral wall 129 of the power supply pack in order to increase the clearance for the inward flexible movement of the prong upon contact with the edge 22 of the compartment.

FIG. 18 illustrates the preferred embodiment of the prong assembly suitable for use on the power pack illustrated in

EXHIBIT 5

EXHIBIT 6

360

5,608,303

7

FIG. 2; wherein a pair of baffles 129, 130 are used astride the prong 124.

In the alternate embodiment of the prong assembly illustrated in FIG. 19, the distal end 131 of the prong 132 nests into a cavity 133 along the lower edge of the housing side wall 143.

While the preferred embodiments of the invention have been described, modifications can be made and other embodiments may be device without departing from the spirit of the invention and the slope of the appended claims.

What is claimed is:

1. The combination of an electrical device including a compartment having a first length, a width and a depth originally and exclusively dimensioned to hold an even number of batteries therein, said batteries being mounted side-by-side in alternating opposite directions and being interconnected to provide a working voltage level to said device, said compartment having a top opening sized to allow one-by-one loading and unloading said batteries into and out of said compartment, said opening having a second length shorter than said first length, and a ledge extending from a lateral wall of said compartment to said opening, terminals protruding from lateral walls of said compartment and wired to carry electrical current from said batteries to electrical circuits in said device, at least two of a first type of said terminals including resiliently compressible first contact member extending from opposite lateral walls of said compartment including one terminal extending under said opening and said first type of terminals being positioned to forcefully contact poles of said batteries, and at least two of a second type of said terminals including second contact member positioned under said ledge to contact opposite poles of said batteries, and a removable cover shaped and dimensioned to close said opening co-planarly with said ledge, with a rechargeable power supply which comprises:

a housing having a portion shaped and dimensioned to be at least partially introduced into said compartment through said opening;

at least one rechargeable power cell mounted within said housing and having positive and negative poles, and an output voltage substantially equal to said voltage level;

a current conducting means wired for feeding a charging current to said at least one power cell, said current conducting means including a connector mounted on said housing; and

means for connecting said at least one cell to said terminals, including a first resiliently compressible prong protruding laterally from said housing and being sized and positioned on a side wall of said portion to extend under said ledge and come in contact with a second contact member of one of said second type of terminals and a second prong positioned on said side wall to come into contact with one of said first contact members when said portion of said housing is inserted into said compartment.

2. The combination of claim 1, wherein said connector comprises: •

a two-pole jack wired to said first and second prongs.

3. The combination of claim 2, wherein said means for connecting further comprise:

A resistor and a diode, said diode having an anode terminal and a cathode terminal, said resistor and diode being wired in parallel between one of said terminals and the positive pole of said at least one power cell, the anode terminal of the diode being wired to said positive pole.

8

4. The combination of claim 2, wherein said connector is positioned on a section of said housing accessible when said portion is inserted into said compartment.

5. The combination of claim 3, wherein said compartment comprises a plurality of parallel bottom ribs spaced to position and cradle said batteries;

said housing includes a bottom piece; and

said bottom piece has slots positioned and dimensioned to engage said ribs.

6. The combination of claim 2, wherein said housing has a top including a peripheral section, said connector being mounted on said top; and

said means for feeding a charging current comprises a current-limiting circuit between said connector and said at least one power cell.

7. The combination of claim 3, wherein said housing includes a peripheral wall slanted inwardly and away from one of said contact members.

8. A rechargeable power supply for use in combination with an electrical device that includes a compartment having a first length, a width and a depth originally and exclusively dimensioned to hold an even number of batteries therein, said batteries being mounted side-by-side in alternating opposite directions and being interconnected to provide a working voltage level to said device, said compartment having a top opening sized to allow one-by-one loading and unloading said batteries into and out of said compartment, said opening having a second length shorter than said first length, and a ledge extending from a lateral wall of said compartment to said opening, terminals protruding from lateral walls of said compartment and wired to carry electrical current from said batteries to electrical circuits in said device, at least two of a first type of said terminals including resiliently compressible first contact members extending from opposite lateral walls of said compartments including one terminal extending under said opening and said first type of terminals being positioned to forcefully contact poles of said batteries, and at least two of a second type of said terminals including second contact members positioned under said ledge to contact opposite poles of said batteries, and a removable cover shaped and dimensioned to close said opening co-planarly with said ledge, said rechargeable power supply comprising:

a housing having a portion shaped and dimensioned to be at least partially introduced into said compartment through said opening;

at least one rechargeable power cell mounted within said housing and having positive and negative poles, and an output voltage, substantially equal to said voltage level;

current conducting means wired for feeding a charging current to said at least one power cell, said current conducting means including a connector mounted on said housing; and

means for connecting said at least one cell to said terminals, including a first resiliently compressible prong protruding laterally from said housing and being sized and positioned on a side wall of said portion to extend under said ledge and come in contact with a second contact member of one of said second type of terminals and a second prong positioned on said side wall to come into contact with one of said first contact members when said portion of said housing is inserted into said compartment.

9. The power supply of claim 8, wherein said connector comprises:

a two-pole jack wired to said first and second prongs.

EXHIBIT 5   56

EXHIBIT 6
361

5,608,303

9

10. The power supply of claim 9, wherein said means for connecting further comprise:

A resistor and a diode, said diode having an anode terminal and a cathode terminal, said resistor and diode being wired in parallel between one of said terminals and the positive pole of said at least one power cell, the anode terminal of the diode being wired to said positive pole

11. The power supply of claim 9, wherein said connector is positioned on a section of said housing accessible when said portion is inserted into said compartment.

12. The power supply of claim 8, wherein said compartment comprises a plurality of parallel bottom ribs spaced to position and cradle said batteries;

10

said housing includes a bottom piece; and

said bottom piece has slots positioned and dimensioned to engage said ribs.

13. The power supply of claim 9, wherein said housing has a top including a peripheral section, said connector being mounted on said top; and

said means for feeding a charging current comprises a current-limiting circuit between said connector and said at least one power cell.

14. The power supply of claim 9, wherein said housing includes a peripheral wall slanted inwardly and away from one of said contact members.

\* \* \* \* \*

EXHIBIT 5   57

**EXHIBIT 6**
**362**

US00D344260S

# United States Patent [19]

Leiserson et al.

[11]   Patent Number:   Des. 344,260

[45]   Date of Patent:   ⁑ Feb. 15, 1994

[54]   RECHARGEABLE BATTERY PACK

[75]   Inventors:   Steven G. Leiserson, 10845 Wheatlands Ave., Ste. C, Santee, Calif. 92071; Helmut Ochner, Torrance, Calif.

[73]   Assignee:   Steven G. Leiserson, Santee, Calif.

[**]   Term:   14 Years

[21]   Appl. No.:   876

[22]   Filed:   Oct. 27, 1992

#### Related U.S. Application Data

[62]   Division of Ser. No. 793,122, Nov. 18, 1991, Pat. No. 5,225,760.

[52]   U.S. Cl. ................................................. D13/103

[58]   Field of Search ..................... 320/2, 3, 4; 429/96, 429/97, 98, 99, 100, 121, 122, 123; D13/103, 110; D14/114, 138, 217

[56]   References Cited

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 235,148 | 5/1975 | Rowbottam | D13/103 |
| D. 237,973 | 12/1975 | Stern | D13/103 |
| 5,225,760 | 7/1993 | Leiserson | 320/2 |

*Primary Examiner*—Wallace R. Burke
*Assistant Examiner*—Joel Sincavage
*Attorney, Agent, or Firm*—Henri J. A. Charmasson

[57]   **CLAIM**

The ornamental design for a rechargeable battery pack, as shown and described.

#### DESCRIPTION

FIG. 1 is a front elevational view of a rechargeable battery pack showing our new design;
FIG. 2 is a right side elevational view thereof, the left side being a mirror image of the right side;
FIG. 3 is a back elevational view thereof;
FIG. 4 is a top plan view thereof; and
FIG. 5 is a bottom plan view thereof.



EXHIBIT 6   58

EXHIBIT 6

363



FIG. 1



FIG. 2



FIG. 3

EXHIBIT 6  59

EXHIBIT 6

364

Case 3:00-cv-00716-JM-JFS   Document 19   Filed 08/03/00   Page 82 of 84



FIG. 4

FIG. 5

EXHIBIT 6   60
EXHIBIT 6
365

| UNITED STATES DISTRICT COURT<br>FOR THE SOUTHERN DISTRICT OF CALIFORNIA | | FOR COURT USE ONLY |
|---|---|---|
| **TITLE OF CASE (Abbreviated)**<br>NYKO TECHNOLOGIES, INC.<br>v.<br>RED LINE RESEARCH LABORATORIES, INC., ET AL. | | |
| **ATTORNEY(S) NAME AND ADDRESS**      **TELEPHONE**<br>MATTHEW V. HERRON, ESQ.             (619) 233-4122<br>ROBERT M. STEELE, ESQ.<br>MEISENHEIMER HERRON & STEELE<br>550 West C Street, Suite 1760<br>San Diego, CA 92101-3545 | | |
| **ATTORNEY(S) FOR:**<br>Defendants | **HEARING DATE-TIME-DEPT**<br>Hon. Jeffrey Miller; Ctrm. 6 | **CASE NUMBER**<br>00 CV 00716 JM (POR) |

## DECLARATION OF PERSONAL SERVICE

1.     At the time of service I was at least 18 years of age and not a party to this action, and **I served copies** of the:

**CERTIFIED STATEMENT IN SUPPORT OF DECLARATORY DEFENDANTS' APPLICATION FOR RECONSIDERATION OF THE DENIAL OF THEIR MOTION TO DISMISS COMPLAINT FOR LACK OF JURISDICTION AND IMPROPER VENUE, OR IN THE ALTERNATIVE TO TRANSFER THIS ACTION TO THE CENTRAL DISTRICT OF CALIFORNIA, AND REQUEST FOR JUDICIAL NOTICE;**
**DEFENDANTS' ANSWER/DEMAND FOR JURY TRIAL.**

2.     a.     Party Served:              Jeffrey M. Olson, Lyon & Lyon, Attorneys for Plaintiff NYKO
                                          TECHNOLOGIES

       b.     Person Served:

       c.     Address:                   4225 Executive Square, Suite 800
                                          La Jolla, CA 92037

3.     I served the party named in item 2

       a.     **by personally delivering** the copies

              (1)     on:                August 3, 2000

              (2)     at:

4.     Person serving:               Recoverable Costs Per CCP 1033.5(a)(4)(B)

                                      a.     Fee for Service:     $

CENTRAL ATTORNEY SERVICE INC.   d.     Employee of Registered
1500 STATE STREET                      California process server.
SUITE 245                              (2)  Registration No. 111
SAN DIEGO, CA  92101                   (3)  County:  SAN DIEGO
(619) 233-3344

5.     **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and
       correct.

Date: August 3, 2000          Signature:
                                        (Signature)

Jud. Coun. form, rule 982(a)(23)

| UNITED STATES DISTRICT COURT<br>FOR THE SOUTHERN DISTRICT OF CALIFORNIA | FOR COURT USE ONLY |
|---|---|
| **TITLE OF CASE (Abbreviated)**<br>NYKO TECHNOLOGIES, INC.<br>v.<br>RED LINE RESEARCH LABORATORIES, INC., ET AL. | |

| **ATTORNEY(S) NAME AND ADDRESS**     **TELEPHONE** |
|---|
| MATTHEW V. HERRON, ESQ.                  (619) 233-4122<br>ROBERT M. STEELE, ESQ.<br>MEISENHEIMER HERRON & STEELE<br>550 West C Street, Suite 1760<br>San Diego, CA 92101-3545 |

| **ATTORNEY(S) FOR:**<br>Defendants | **HEARING DATE-TIME-DEPT**<br>Hon. Jeffrey Miller; Ctrm. 6 | **CASE NUMBER**<br>00 CV 00716 JM (POR) |
|---|---|---|

## DECLARATION OF SERVICE BY MAIL

I, TAMMY DOS SANTOS, declare that: I am over the age of eighteen years and not a party to the action; I am employed in the County of San Diego, California, within which county the subject mailing occurred; my business address is 550 West C Street, Suite 1760, San Diego, CA 92101-3545; I am familiar with Meisenheimer Herron & Steele's practice for collection and processing correspondence for mailing with the United States Postal Service pursuant to which practice all correspondence will be deposited with the United States Postal Service the same day in the ordinary course of business. I served the following document(s):

**CERTIFIED STATEMENT IN SUPPORT OF DECLARATORY DEFENDANTS' APPLICATION FOR RECONSIDERATION OF THE DENIAL OF THEIR MOTION TO DISMISS COMPLAINT FOR LACK OF JURISDICTION AND IMPROPER VENUE, OR IN THE ALTERNATIVE TO TRANSFER THIS ACTION TO THE CENTRAL DISTRICT OF CALIFORNIA, AND REQUEST FOR JUDICIAL NOTICE; DEFENDANTS' ANSWER/DEMAND FOR JURY TRIAL.**

and hereafter, addressed to each such addressee respectively as follows:

Frederick A. Lorig
David M. Kleinman
BRIGHT & LORIG
633 W. Fifth Street, Suite 3330
Los Angeles, CA 90071
(213) 627-7774/(213) 627-8508 (FAX)
Co-Counsel for Defendants

I then sealed each envelope and placed each for collection and deposit on August 3, 2000, following ordinary business practices. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 3, 2000, at San Diego, California.

TAMMY DOS SANTOS